# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| Richard Alexander Murdaugh, ) | |
| ) | Civil Action No. 3:22-0608-CMC |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM IN OPPOSITION TO** |
| D. Shane Kitchens, CJM, in his official ) | **PLAINTIFF'S MOTION FOR** |
| capacity as Interim Director ) | **PRELIMINARY INJUNCTION** |
| Alvin S. Glenn Detention Center, ) | |
| Richland County Government, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **INTRODUCTION**

The Plaintiff Richard Alexander Murdaugh has filed a Motion for Preliminary Injunction. (Dkt. #7). In response to recent media requests made pursuant to the South Carolina Freedom of Information Act ("FOIA"), S.C. Code Ann. § 30-4-10, *et seq.*, Richland County disclosed audio recordings of outgoing telephone calls made by the Plaintiff as a detainee at the Alvin S. Glenn Detention Center ("ASGDC").

The Plaintiff filed this action pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*, seeking an injunction "preventing Defendant, and anyone acting on his behalf or in concert with Defendant, from disclosing to anyone the intercepted telephone communications between Plaintiff and others in response to a records request or for any other purpose except as expressly permitted in Section 2517(1)-(3) of Title

1

III." *See*, Complaint, ¶ 30.  The Plaintiff is presently seeking a preliminary injunction for that very relief.  The Defendant D. Shane Kitchen, in his official capacity as the ASGDC Interim Director, opposes that motion.  As discussed below, the Plaintiff has failed to demonstrate the requirements necessary for the Court to issue such a preliminary injunction.

## **LEGAL ANALYSIS**

The United States Supreme Court has cautioned that "[a] preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Id*.  The Fourth Circuit is in agreement that "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."  *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).

According to the Supreme Court, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  The Fourth Circuit has explained that the *Winter* standard "requires that the plaintiff make a clear showing that it will likely succeed on the merits at trial."  *Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).  The Fourth Circuit recognized that "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave

2

or serious *question* for litigation." 575 F.3d at 346-47. (Emphasis in original). Under the *Winter* standard, the burden is on the plaintiff to prove each of the four requirements.

In the case at bar, the Plaintiff has not presented any evidence nor legal justification for the extraordinary relief of a preliminary injunction. He focuses solely on one of the four prongs of the *Winter* test -- whether he is likely to succeed on the merits. As to the other three requirements, his motion is silent. The motion is supported by no affidavits. In fact, the Plaintiff includes no discussion as to how the absence of a preliminary injunction will likely cause him irreparable harm. He does not address the balancing of equities, nor does he argue – let alone show – that the preliminary injunction is in the public interest. In short, the Plaintiff has not demonstrated he is deserving or in need of the preliminary injunctive relief that he seeks.

As indicated, the Plaintiff addresses only the merits of his cause of action brought pursuant to Title III of the Omnibus Crime Control and Safe Streets Act. Yet, the Plaintiff's application of Title III is consumed with legal error, and as a result, he has not demonstrated a likelihood of success on the merits.

Contrary to the Plaintiff's analysis, Title III has no application to the recordings of his outgoing telephone calls from the Alvin S. Glenn Detention Center. Title III generally prohibits the unauthorized "interception" of "any wire, oral, or electronic communications." 18 U.S.C. § 2511(1)(a). Title III "protects an individual from all forms of wiretapping except where the statute specifically provides otherwise." *Abraham v. County of Greenville*, 237 F.3d 386, 389 (4th Cir. 2001). The term "intercept" is statutorily defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of the any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). However, as the First Circuit explained in *United States v. Lewis*, 406 F.3d 11 (1st Cir. 2005), "§ 2510(5)(a)(ii) creates a law enforcement

exception to what constitutes an intercept." 406 F.3d at 16. The phrase "electronic, mechanical, or other device" is defined to *exclude* "equipment … being used … by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). In effect, as the First Circuit concluded, "the acquisition of the contents of a communication by an investigative or law enforcement officer in the ordinary course of his duties is not an interception for Title III purposes." *Lewis*, 406 F.3d at 16.

The Fourth Circuit followed the same rationale in *United States v. Hammond*, 286 F.3d 189 (4th Cir. 2002). In that case, the criminal defendant sought to suppress recordings of telephone conversations that were made as part of a Bureau of Prisons routine monitoring program. As the First Circuit did in *Lewis*, the Fourth Circuit ruled that the "law enforcement" exception under 18 U.S.C. § 2510(5)(a)(ii) excluded the recordings at issue from the definition of "interception." 286 F.3d at 192. The Court explained: "Because the BOP was acting pursuant to its well-known policies in the ordinary course of its duties in taping the calls, the law enforcement exception exempted the actions of the BOP from the prohibitory injunction of Section 2511." *Id*. The Fourth Circuit also agreed with the Seventh Circuit that "section 2511 exempts the conversations covered by it from the *entirety* of Title III," including the limitations on disclosure as contained in 18 U.S.C. § 2517. 286 F.3d at 193, *citing In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621, 625 (7th Cir. 2000). (Emphasis in original).

This same reasoning was also applied by the D.C. Circuit in the context of a federal Freedom of Information Act ("FOIA") claim, which is instructive in the case at bar. In *Smith v. United States Department of Justice*, 251 F.3d 1047 (D.C. Cir. 2001), the plaintiff made a FOIA request for recorded telephone conversations between himself and his attorney when he was incarcerated in a federal correctional facility. The Government refused to produce the

recordings. However, the D.C. Circuit explained that "[a]s we read Title III it is inapplicable to the recordings at issue," and "under the FOIA [plaintiff] is entitled to the recordings." 251 F.3d at 1048. The D.C. Circuit first expressed "no doubt that the recordings [plaintiff] seeks fall under the exclusionary terms of § 2510(5)(a)(ii): They were obtained by 'law enforcement officers' (the prison authorities) who 'used,' 'in the ordinary course of their duties,' some telephone 'instrument, equipment or facility, or a component thereof.'" 251 F.3d at 1048. The court thus concluded that "§ 2510(5)(a)(ii) does not 'authorize' the recordings but instead *excludes them entirely from the coverage of the statute*." 251 F.3d at 1050. (Emphasis added). The D.C. Circuit also acknowledged the "consistent line of cases" holding that recordings made by prison authorities "are not unlawful under Title III because they come within the exclusionary terms of § 2510(5)(a)(ii)." *Id*.

In sum, as the cases from the First, Fourth, and D.C. Circuits demonstrate, recordings of an inmate's telephone communications made while imprisoned are not subject to Title III or any of its limitations on disclosure as set forth in 18 U.S.C. § 2517. As the Defendant Kitchen attests, the telephone system at ASGDC "automatically records all outgoing inmate telephone calls" with the exception of pre-arranged attorney-client calls. *See*, Kitchen Aff., ¶ 5. While the recorded calls are not actively monitored as they occur, "the Professional Standards staff within ASGDC will review random calls as well as calls on which there may be issues that arise." *See*, Kitchen Aff., ¶ 5. Additionally, as Kitchen attests, "[t]he telephone calls are used for law enforcement and investigative purposes, including to conduct internal investigations of potential wrongdoing and institutional violations, as needed to maintain the safety and security of ASGDC, its inmates, and staff." *See*, Kitchen Aff., ¶ 5. Moreover, the calls may be accessed by both the South Carolina Attorney General's Office and the Fifth Circuit Solicitor's Office for law

5

enforcement and investigative purposes.  *See*, Kitchen Aff., ¶ 6.  Thus, the telephone calls in question are recorded in the ordinary course of the officers' duties.  As the First Circuit observed, "it is beyond question that as a part of managing and regulating the day-to-day activities of a correctional institution, prison officials must be empowered to investigate potential criminal violations in order to preserve the security and orderly management of the institution."  *Lewis*, 406 F.3d at 17.  Thus, consistent with the *Lewis, Hammond,* and *Smith* decisions, the recordings of the Plaintiff's telephone conversations are excluded *from the entirety of Title III*, and the Plaintiff's Title III cause of action will most certainly fail.  At the very least, this legal analysis demonstrates that the Plaintiff has not and cannot show a likelihood of success on the merits of his claim for injunctive relief.

Although the Court need not reach the issue, the "consent" exception under Title III is also applicable to validate the recordings at issue.  In *Hammond*, *supra*, the Fourth Circuit found that the inmate consented to having his telephone conversations recorded in accordance with 18 U.S.C. § 2511(2)(c), which provides:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).  The Fourth Circuit concluded that "the 'consent' exception applies to prison inmates, such as Hammond, required to permit monitoring as a condition of using prison telephones, joining other circuits which have found the exception to apply under very similar circumstances."  286 F.3d at 192.

In the case at bar, the record shows that ASGDC inmates and the parties to telephone calls received from inmates are advised that the calls are subject to recording and monitoring.

6

As the Plaintiff readily concedes, the ASGDC Inmate Rules Orientation, a copy of which was furnished to the Plaintiff, states: "All calls from the housing modules are collect calls and are subject to recording and monitoring." *See*, Kitchen Aff., ¶ 8. In addition, as Kitchen attests, "when a telephone call is initiated, before the parties are connected, both parties receive a recorded message advising that 'all calls are subject to monitoring and recording.'" *See*, Kitchen Aff., ¶ 8.

Nonetheless, the Plaintiff contends that the "consent" exception is inapplicable because inmates are not advised that the recordings of telephone calls may be released to the public under FOIA. However, South Carolina recognizes that "[e]veryone is presumed to have knowledge of the law." *Smothers v. U.S. Fidelity and Guaranty Co.*, 322 S.C. 207, 470 S.E.2d 858, 860 (Ct. App. 1996). That should certainly apply to the Plaintiff who himself is a trained lawyer and should be very familiar with FOIA and its broad application under South Carolina law. Moreover, to the extent the Plaintiff is complaining that his privacy rights are violated by the disclosures, the Fourth Circuit in *Hammond* recognized that the "congressional concern for protecting privacy … does not extend to prison inmates, given their substantially reduced expectation of privacy." *Hammond*, 286 F.3d at 193-94.

Although the Plaintiff does not address any claim of irreparable harm in his motion or the balancing of equities or the public interest factor, the Defendant submits that the equities also weigh in favor of the denial of the requested preliminary injunction. Notably, the Plaintiff does not contest or dispute Richland County's interpretation of the South Carolina Freedom of Information in determining that the recordings are a "public record" subject to disclosure under S.C. Code Ann. § 30-4-30. Moreover, the public interest is best served by the denial of the requested preliminary injunction because the South Carolina Supreme Court has consistently

7

held that "[t]he purpose of [FOIA] is to protect the public by providing for the *disclosure* of information."  *Bellamy v. Brown*, 305 S.C. 291, 408 S.E.2d 219, 221 (1991).  (Emphasis in original).  There is no litmus test where the governmental entity (or even the courts) may evaluate the requestor's motives or any potential or intended use of the disclosed public records.  In fact, the State Supreme Court clearly stated from the early days of FOIA that "[n]o legislative intent to create a duty of confidentiality can be found in the language of the Act."  *Id*.  As a result, "the exemptions from disclosure contained in §§ 30-4-40 and -70 do not create a duty not to disclose."  *Id*.  To the contrary, the "exemptions, at most, simply allow the public agency the discretion to withhold exempted materials from public disclosure."  *Id*.  However, even those exemptions are strictly construed.  *See also*, *Burton v. York County Sheriff's Department*, 358 S.C. 339, 594 S.E.2d 888, 892 (Ct. App. 2004) ("The FOIA creates an affirmative duty on the part of public bodies to disclose information").

In sum, the Plaintiff has woefully failed to demonstrate a likelihood of success on the merits.  The controlling authorities cited herein from the Fourth Circuit and other circuits demonstrate that, in all likelihood, the Defendant – not the Plaintiff – will prevail on the merits of the Title III claim.  The Plaintiff, for whatever reason, relies solely on that one requirement of the preliminary injunction analysis.  He makes no attempt to show the likelihood of irreparable harm by affidavit or even in his arguments, and he certainly does not engage in any balancing of the equities.  Clearly, the Plaintiff has not demonstrated that a preliminary injunction – an extraordinary remedy that is granted "only sparingly" – is appropriate in this case.  Indeed, such a remedy will interfere with the strong public policy that underpins the Freedom of Information Act.

## **CONCLUSION**

Based on the foregoing legal analysis and discussion, the Defendant D. Shane Kitchen, in his official capacity, respectfully requests that the Court deny the Plaintiff's Motion for Preliminary Injunction.

                                            Respectfully submitted,

                                            LINDEMANN & DAVIS, P.A.

                                            BY:     *s/ Andrew F. Lindemann*
                                                   ANDREW F. LINDEMANN         #5070
                                                   5 Calendar Court, Suite 202
                                                   Post Office Box 6923
                                                   Columbia, South Carolina 29260
                                                   (803) 881-8920
                                                   Email: andrew@ldlawsc.com

                                            *Counsel for Defendant D. Shane Kitchen*

March 15, 2022