## Before the Supreme Court ("S Ct") of South Carolina ("SC")

In the Matter of Marie Assa'ad-Faltas, Respondent *pro se.*            Appellate Case No. 2021-000815

**Respondent's *Emergency* Motions: (1) to Dismiss OR for Directed Verdict Due to Impossibility of *Subjective* Intent to Willfully Defy; (2) for Discovery on Evidence, *if any*, of *Subjective* Intent to Willfully Defy; and (3) for Accommodation of Respondent's *Physical* Disabilities in the Hearing of 22 February 2022, God willing.**

The test is of the *subjective,* **not objective,** intent; *State* v. *Passmore,* 363 S.C. 568, 572, 611 S.E.2d 273 (2005).

Having, on the last business day before today's hearing, received: (a) notice the hearing is still scheduled despite her *written* statement that she needs to appear *pro se* whatever be the risks/disadvantages of so doing; and (b) separate, belated admission of this Court's receipt of Dr. Assa'ad-Faltas' 27 August 2021 Motion in SC Appellate Case 2013-000862, **and without waiving her previous grounds for dismissal**, she now moves for dismissal *or for directed verdict before trial* **because the existing evidence to be used against her is that she acted** *out of necessity, NOT a subjective intent to willfully defy,* **AND that SC Circuit Judge Brown had, in his 12 July 2021 (Ex. 1A-B) ORDER, at p 7 written** [with bolding added]:

> Our Supreme Court's 2017 Order says that in cases in which Dr. Faltas is allowed to proceed *pro se* Dr. Faltas may submit filings either via hand-delivery or U.S. Mail. In light of COVID-19, she is also allowed to make filings via fax and email. *See* **Order RE: Operation of the Trial Courts During the Corona Virus Emergency, § (c)(15), as amended April 14, 2020.**

Dr. Assa'ad-Faltas *reasonably* relied on SC Circuit Judge Brown's interpretation of this Court's 27 September 2017 ORDER as allowing flexibility under changed circumstances. Since **all** *allegedly*-offending **methods** of communication occurred "during the Corona virus emergency," Dr. Assa'ad-Faltas *reasonably* extended Judge Brown's reading of this Court's 27 September 2017 ORDER to **methods** of communication with SC's appellate courts, which *remain* closed to the public "during the Corona virus emergency." **Necessity is a complete defense against allegations of** *willful* **intent to defy.** And *before* "the Corona virus emergency," this Court's then-Clerk Shearouse "appreciate[d]" Dr. Assa'ad-Faltas' use of email in emergency (Ex 2). **Both** SC's appellate courts accepted from Dr. Assa'ad-Faltas submissions by e-mail *and ruled on the substance of those submissions* in SC Appellate Cases **2019-000708** (*e.g.*, 3 September 2021 Motion to Relieve Counsel and 13 October 2021 ORDER thereon) **and 2020-000891** (*e.g.*, 1 October 2021 Motion to Appoint Counsel to Submit Amicus and 5 October 2021 ORDER thereon).

***Never in those two cases was* Dr. Assa'ad-Faltas told *even informally* that modifications due to SC's appellate courts' closure to the public "during the Corona virus emergency," are denied to her *alone* out of all SC's inhabitants**. And **all** *allegedly*-probative affidavits show, *if* Dr. Assa'ad-Faltas *called*, it was for valid business *always* arising from SC's appellate courts neglect of Dr. Assa'ad-Faltas' cases or errors in handling them.

**The 16 February 2022** (received 18 February 2022) **letter from this Court's Clerk admits 23 November 2021,** *at the latest,* **receipt of Dr. Assa'ad-Faltas' 27 August 2021 motion in SC Appellate case 2013-000862 but** *suddenly* **announces it will not be accepted because filed by e-mail. (Ex. 3A-B)** *Dr. Assa'ad-Faltas should have been given a timely chance to re-submit it by hand-delivery if necessary.* **And, if ORDERS in SC Appellate Case 2013-000862 are permanent injunctions,** Dr. Assa'ad-Faltas deserves *at any time* to move to end/modify the injunction due to change of circumstances **especially that she is brought in** *criminal* **contempt of it.**

**Dr. Assa'ad-Faltas also seeks reasonable accommodation of her knee and breathing disabilities per** *Tennessee* v. *Lane,* **541 U.S. 509 (2004). (Exx 4-5)** Exx. 6-9 are of harmful lawyers and proof of indigency. Ex 10 is self-explanatory.

## Certificate of Submission AND Certificate of Service AND of Copies

Submitted **and served by hand-delivery in open court** and *copied* to: His Excellency AbdelRahman Raafat at abdelrahman.raafat@egyptembassy.net, Professors Erica Hashimoto at eh502@georgetown.edu, Daniel Ortiz at dro@virginia.edu, and Sean Andrussier at andrussier@law.duke.edu, and to Tim Griffith at tlgriffith@tlgriffith.com, Jessica Saxon at jsaxon@sccid.sc.gov, Robert Dudek at rdudek@sccid.sc.gov, and relevant others **on 22 February 2022,** all God so willing.

S/Marie-Thérèse Assa'ad-Faltas, MD, MPH, Applicant/Appellant *pro se*
P.O. Box 9115, Columbia, SC 29290                    Phone: (803) 783-4586
e-mail: Marie_Faltas@hotmail.com                    Cell: (330) 232-4164

RECEIVED
FEB 22 2022
.C. SUPREME COUR

page **1** of 1 exclusive of ten exhibits and of incorporation by reference of all matter available to judicial notice

**Before the Supreme Court ("S Ct") of South Carolina ("SC")**
In the Matter of Marie Assa'ad-Faltas, Respondent *pro se.*    **Appellate Case No. 2021-000815**

**Dr. Assa'ad-Faltas' *Emergency* Motions for her Current Accusers-Judgers: to Reconsider their 2 March 2022 ORDER or to Enter a Conviction with Stay of Sentencing Pending Appeal to the U.S. Supreme Court and/or Federal Habeas Proceedings because Trial under Current Conditions poses Fatal Risks to Dr. Assa'ad-Faltas' Soul and Body and Provides *NO HOPE* of a Just Acquittal.**

Dr. Assa'ad-Faltas' accusers-judgers' 2 March 2022 ORDER in this case belies any "respect" for her *pro se* advocacy but aims to trap her into *direct* contempt if she goes beyond the *purported* **"specific issues before this Court—namely her compliance, or lack of compliance, with prior orders of the Court concerning the manner and method of Respondent's communications and filings with the Court."** *Id.* at p 2, ¶2, That echoes the accusers-judgers' 1 February 2022 ORDER at p 3, **"We caution Respondent that the sole issue before the Court is her compliance, or lack of compliance, with the orders of this Court concerning the manner and method of her communications and filings with this Court."**

More than just dispensing with a lawyer, Dr. Assa'ad-Faltas' decision to proceed *pro se* is a choice to say for herself *what her conscience dictates.* Presumably speaking for all five of Dr. Assa'ad-Faltas' accusers-judgers, SC Associate Justice Few complimented Dr. Assa'ad-Faltas' submissions **"over the years"** as revealing a **"a broad and deep understanding of legal principles and procedures."** Transcript of 22 February 2022 *Faretta* hearing at pp 6-7. That "understanding" includes knowing that defenses to indirect criminal contempt charges include invalidity of the allegedly violated order(s).

What Dr. Assa'ad-Faltas' accusers-judgers are doing to her insults ***her* humanity and *their* talents and honor.** Most of the proof is in the prosecutor's file and in SC S Ct's complete Appellate Case 2021-000815 file, both of which Dr. Assa'ad-Faltas hereby *again* demands per SC Crim.R 5, *Brady,* and *Kyles* v. *Whitley,* 514 U.S. 419 (1995). Dr. Assa'ad-Faltas' accusers-judgers': (1) 2 March 2022 ORDER p 2, ¶2, for **"a more targeted discovery request,"** erroneously importing civil standards; (2) referral to the 22 March 2022 process as a "Rule to Show Cause hearing," erroneously importing *sui generi* lawyer-discipline proceedings; (3) refusal to make the process *really* public by putting 2021-000815 on C-Track; and (4) denial of remote technology to *realistically* enable Dr. Assa'ad-Faltas' consular officer to monitor the 22 March 2022 event; prove that Dr. Assa'ad-Faltas' accusers-judgers want to deny *all* Dr. Assa'ad-Faltas' Sixth Amendment and Due Process rights for a *criminal trial* and put her in a Star-Chamber-trilemma of contempt for pursuing defenses the accusers-judgers forbid, of forfeiting her defenses for appeal/federal habeas purposes, or of perjuriously admitting guilt.

Dr. Assa'ad-Faltas cannot, *even for tactical reasons,* pronounce herself guilty of that of which she knows herself to be innocent. This document hopes to obviate the need for the 22 March 2022 event. If it convinces Dr. Assa'ad-Faltas' accusers-judgers **that *their own* opinions in other cases *and the honor of the judicial profession*** require dismissal or a directed acquittal verdict, it ends the case in dignity and economy. If not, she asks for a variant of the process used in *United States v. Hubbell,* 530 U.S. 27, 34 (2000), whereby some appealable order is obtained without dishonesty or collusion.

SC Appellate Case 2021-000815's timing, tyranny and counter-productiveness, give rise to at least an appearance of extortion of Dr. Assa'ad-Faltas to drop all her pursuits of justice against her previous malicious prosecutors/false accusers, or of a dare by SC Circuit Judge Brown for SC S Ct to procure a contempt conviction of Dr. Assa'ad-Faltas after Judge Brown failed to obtain one despite recruiting Dr. Assa'ad-Faltas' forced lawyers against her, *all as if people were toys for judges.*

Under false pretext of moving Dr. Assa'ad-Faltas' cases forward, SC Circuit Judge Brown procured from SC Chief Justice Beatty, who is supposedly self-recused from Dr. Assa'ad-Faltas' cases, a 15 September

2020 ORDER assigning six cases to Judge Brown. From then until July 2021, Judge Brown did **nothing substantive in any of those cases despite several long-pending motions in them,** including: (1) the State's motions to dismiss PCR cases 2019-CP-40-02217, 2218, and 2219, which were fully heard on 10 August 2020 **but remain unadjudicated** *to this day,* and (2) Dr. Assa'ad-Faltas' emergency motions to modify bond in 2018-CP-40-00963, where she is a *pro se* defendant, which remains **unheard to this day.** When that motion was finally scheduled for 28 January 2022, Plaintiff contacted Judge Brown *ex parte* and obtained from him a 30-day extension to obtain counsel. (After no counsel appeared for Plaintiff, Dr. Assa'ad-Faltas sent her 2 March 2022 motion for an immediate ruling on her motion for summary judgment in her favor in view of Plaintiff's dilatory tactics; but Judge Brown has not yet even approved the motion for filing. Indeed, Dr. Assa'ad-Faltas' only submission Judge Brown approved for filing since 8 July 2021 is a motion to correct and clarify Judge Brown's 8 July 2021 "pre-filing injunction" in which he falsely accused *Dr. Assa'ad-Faltas* of delay and frivolity in other matters where she had already *prevailed.*

*All* emails from Dr. Assa'ad-Faltas to Judge Brown from September 2020 to July 2021 (circa 3 per *month*) were *solely* seeking movement on the *substance* of her cases. Judge Brown responded by inviting what he hoped to be hundreds of emails *from others* to punish Dr. Assa'ad-Faltas' 3/month emails: **"Any communications from Dr. Faltas that violate this order should be directed to Judge Craig Brown's office immediately. [fn 7 cbrownlc@sccourts.org and place in the re: line 'Faltas contact attempt (date)'] Member [sic] of the South Carolina Judicial Branch should not accept any communications from Dr. Faltas except as detailed below."** This pattern has been consistent since her 2 December 2009 false arrest on two *known*-false counts of harassment in the first degree **and continues in the present contempt proceedings** *which no reasonable person can believe are meant for judicial economy or to protect Judicial Branch members from Dr. Assa'ad-Faltas' supposed excesses.*

**Judge Brown wrote and caused to be printed and filed 17x3 = 51 pages in PCR cases 2019-CP-40-02217, 2218, and 2219, to set Dr. Assa'ad-Faltas up for contempt when it could have taken the jurist only 5x3 = 15 pages to deny (or grant) the State's motion to dismiss those cases.** In SC Appellate case 2021-000815, four SC Associate Justices wrote five orders so far (24 January, 1 February, 15 February, 24 February, and 2 March 2022), held a *Faretta* hearing, and plan a God-knows-how-long 22 March 2022 event, all after affidavits were gathered chronologically from Marjorie Jones, Jenny Kitchings, Pat Howard, Caitlyn Singleton, Jacklyn Orr, Lynn Falin and Dan Shearouse, and all for a feigned need to halt Dr. Assa'ad-Faltas' supposed excesses in having called or e-mailed seven SC Judicial Branch employees *whose jobs include receiving, and responding to, emails and calls from the public,* **a total** of 22 times from 22 October 20**2**0 to 5 January 202**2** (**average 22/16x7 = one fifth of a call or email per each said employee per month**). To prepare those affidavits and appear for the 22 March 2022 event, those seven and others spent/will spend tenfold the time it took each to respond to, or ignore, any call/email from Dr. Assa'ad-Faltas. **None, *but none,* of the affidavits even claims Dr. Assa'ad-Faltas uttered or wrote an improper word or addressed anything other than her case(s).**

*Ex post facto* prohibition against Dr. Assa'ad-Faltas' contacts by phone/email first appears in the 24October 2012 administrative ORDER (**"Contrary to the assertions that Faltas has made, the order of April 8, 2011, is applicable not only to cases filed on or after the date of that order, but also to cases that were pending on the date of that order."**) *unabashedly solely* to increase the pressure on her to pay lawyers to do for her what she is able, willing *and constitutionally entitled,* to do for herself. The 8 April 2011 ORDER was largely repealed but that now-purposeless prohibition remained.

"Stupid Dr. Faltas, it's not what you said, it's that you said it by phone/email." "How else to contact courts closed due to CoViD-19? By telepathy? Homing pigeons? Drums and smoke signals?"

Since 24 January 2022, SC S Ct sent SC's Bureau of Protective Services officers to Dr. Assa'ad-Faltas' home five times so far with documents that could easily have been emailed to her instead, all while making *her* travel to SC S Ct's building many times instead of accepting documents from her per SC S Ct's own **"2021-08-25-02 ORDER - Methods of Electronic Filing and Service Under Rule 262 of the South Carolina Appellate Court Rules."** The honor of Dr. Assa'ad-Faltas' accusers-judges is sullied by even the appearance of SC Appellate case 2021-000815 being *solely* an extortion tactic as confirmed by her forced lawyer Timothy Griffith's e-mail of 5 February 2022:

> I will work for – time served on ALL charges, *dismissal of any pending charges including contempt*, in exchange for your dropping all pursuits related to the matters, in all courts of South Carolina, so long as the state agrees to expungement of all the charges clearing your criminal record. Tell me to proceed. [*
> * *] **Clearly expungement means accepting the convictions.** You spoke out if both sides of your mouth. Yes expunge - no no expunge. Well - to your health. [s/]Timothy L Griffith, Attorney at Law

Even if Griffith were puffing and had no promise to effect dismissal of any pending contempt charges "in exchange for" Dr. Assa'ad-Faltas' dropping "all" her civil suits in federal court against her false accusers and malicious prosecutors, **a suspicion of SC S Ct involving itself in extortion has "right or wrong" been created and can be erased only by *unconditional* dismissal of 2021-00815.**

Columbia's Municipal Court's ("CMC"), SC circuit court's, and SC S Ct's abuse of contempt charges for ***extortionate purposes* is further strengthened by this history of temporal connections:**

1. On 5 and 13 December 2009, Dr. Assa'ad-Faltas bonded out of her 2and 12 December 2009 respective false arrests and obtained evidence that then-Assistant Solicitor Weiss had tried to rig the mental evaluation against Dr. Assa'ad-Faltas. **On 23 December 2009, then-SC-Chief-Justice Toal bars Dr. Assa'ad-Faltas from seeking any extra-ordinary writ from SC S Ct *pro se.***

2. On 22 December 2009, SC Circuit Judge Lee issues her "ORDER for Preliminary Injunction," finding that Dr. Assa'ad-Faltas' opponents in civil litigation caused said arrests to gain unfair advantages. **On 30 December 2009, SC S Ct affirms Toal's 23 December 2009 order.**

3. On 26 February 2010, a jury refuses to convict Dr. Assa'ad-Faltas, who, on 9 March 2010, files her "evidence booklet" compiling what perjury and forgery she had, by then, *objectively* documented. **On 31 March 2010, then-SC-Chief-Administrative-Circuit Judges Cooper and Barber issue their bizarre order limiting Dr. Assa'ad-Faltas' entry into 1701 Main Street courthouse to 2:00 - 4:00 pm under penalty of contempt of court.** Dr. Assa'ad-Faltas had reason to fear that Weiss planned to call the mistried case for retrial without notice to Dr. Assa'ad-Faltas.

4. On 6 October 2010, Dr. Assa'ad-Faltas *pro se,* thank God, caused then-Columbia-Assistant-City-Attorney ("CACA") David Fernandez to dismiss the charge underlying the 12 December 2009 false arrest. **Same day, Marion Hanna limits Dr. Assa'ad-Faltas' access to CMC to 2:00 - 4:00 pm.**

5. On 23 March 2011, Dr. Assa'ad-Faltas obtains subpoenas for Weiss and Blanton, *inter alia.* **Same day, Dr. Assa'ad-Faltas gets falsely arrested for trespass on the 1701 Main Street courthouse.**

6. On 27 March 2011, Columbia Police Department's ("CPD") Amanda Star Blanton, who had coordinated Dr. Assa'ad-Faltas' 2 December 2009 false arrest, is herself arrested for disorderly conduct. **On 28 March 2011, Marion Oneida Hanna falsely imprisons Dr. Assa'ad-Faltas for contempt.**

7. In May-June 2010, Dr. Assa'ad-Faltas obtains evidence that Larry Wayne Mason may have killed his second wife but avoided prosecution. **On 8 July 2010, Mason, with Weiss' direction kidnaps Dr. Assa'ad-Faltas and gets her falsely arrested for trespass on her own apartment.**

8. On 23 August 2012, Dr. Assa'ad-Faltas *pro se,* thank God, gets both false harassment charges against herself dismissed *with prejudice.* **On 24 October 2012, then-SC-Chief Toal bars Dr. Assa'ad-Faltas from contacting judges by phone or e-mail.**

9. In the 1 July 2021 virtual status conference with SC Circuit Judge Brown, he is told by Dr. Assa'ad-Faltas that *McCoy* v. *Louisiana*, 584 U.S. __ (2018), vindicated what Dr. Assa'ad-Faltas had been saying for years and that SC Circuit Judge Jocelyn Newman allowed Dr. Assa'ad-Faltas to proceed *pro se* in 2018-CP-40-00963 but one SC Circuit Judge cannot overrule another. **On 8 July 2021, Judge Brown issues his 12 orders to manufacture contempt evidence against Dr. Assa'ad-Faltas and issues a pre-filing injunction against her in 2018-CP-40-00963.**

10. On 31 December 2021, remittitur in SC Appellate Case 2019-000708 issues, thank God, sealing Dr. Assa'ad-Faltas' *pro se* win of PCR case 2017-CP-40-06831 which reversed two 18 May 2011 contempt pronouncement by Marion Oneida Hanna. **On 24 January 2022, SC S Ct initiates contempt charges against Dr. Assa'ad-Faltas and *possibly* communicates its willingness to drop them "in exchange for" her dropping *inter alia* her federal lawsuit against Hanna.**

Having shown SC courts' history of, and lack of scruples against, abusing their contempt powers against her, Dr. Assa'ad-Faltas now shows that the 27 September 2007 ORDER cannot support any contempt action whether that order claims a basis in SC S Ct's judicial power or rule-making power.

**If it were claimed to be a judicial order, it is void as having issued without jurisdiction for lack of underlying case or controversy. The acts of a court without jurisdiction are void *per se.***

While a court *generally* has jurisdiction to determine its jurisdiction *over a case or controversy,* no court has jurisdiction to decide anything in *total* absence of a case of controversy before it. As Justice Fankfurter, concurring in *United States* v. *United Mine Workers of America,* 330 U.S. 258, 310 (1947), explained:

> To be sure, an obvious limitation upon a court cannot be circumvented by a frivolous inquiry into the existence of a power that has unquestionably been withheld. Thus, the explicit withdrawal from federal district courts of the power to issue injunctions in an ordinary labor dispute between a private employer and his employees cannot be defeated, and an existing right to strike thereby impaired, by pretending to entertain a suit for such an injunction in order to decide whether the court has jurisdiction. In such a case, a judge would not be acting as a court. He would be a pretender to, not a wielder of, judicial power.

Can SC S Ct just dictate "*In re* Marie Assa'ad-Faltas, Respondent" [SC appellate case number xyz] an order for her (no ideas please) to donate a kidney then hold her in contempt if she does not? That is not different from the 24 October 2012 no-case-number ORDER or the 27 September 2017 ORDER *sub numero* 2013-000862. **Where was a case or controversy underlying either of them? No case or controversy, no judicial power. And without judicial power, there is no contempt power.**

*District of Columbia Court of Appeals* et al. v. *Feldman* et al., 460 U.S. 462, 476 (1983). explains:

> This Court has considered the distinction between judicial and administrative or ministerial proceedings on several occasions. In *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210 (1908), railroads challenged in federal court the constitutionality of rail passenger rates set by the State Corporation Commission. The question presented by the case was whether the federal court was free to enjoin implementation of the rate order. *Id.,* at 223. In considering this question, we assumed that the State Corporation Commission was, at 477*477 least for some purposes, a court.

*Id.,* at 224. We held, however, that the federal court could enjoin implementation of the rate order because the Commission had acted in a legislative as opposed to a judicial capacity in setting the rates. *Id.,* at 226. In reaching this conclusion, we stated:

> "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind . . . ." *Ibid.*

We went on to suggest that the nature of a proceeding "depends not upon the character of the body but upon the character of the proceedings." *Ibid.* See generally *Roudebush* v. *Hartke,* 405 U. S. 15, 20-22 (1972); *Lathrop* v. *Donohue,* 367 U. S. 820, 827 (1961); *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 259 (1933); *Public Service Co.* v. *Corboy,* 250 U. S. 153, 161-162 (1919).

In *In re Summers,* 325 U. S. 561 (1945), we considered the petitioner's challenge to the constitutionality of a State Supreme Court's refusal to admit him to the practice of law. At the outset, we noted that the record was not in the "customary form" because the state court had not treated the proceeding as "judicial." *Id.,* at 563. In fact, the state court contested our certiorari jurisdiction on the ground that the state-court proceedings had not been judicial in nature and that no case or controversy therefore existed in this Court under Art. III of the Federal Constitution. *Id.,* at 564-565. In considering this contention, we conceded that the state-court proceedings might not have been judicial under state law and that the denial of the petitioner's application for admission to the bar was treated "as a ministerial act which is performed by virtue of the judicial power, such as the appointment ₄₇₈'₄₇₈ of a clerk or bailiff or the specification of the requirements of eligibility or the course of study for applicants for admission to the bar, rather than a judicial proceeding." *Id.,* at 566. We stated, however, that in determining the nature of the proceedings "we must for ourselves appraise the circumstances of the refusal." *Ibid.* In conducting this appraisal, we first stated:

> "A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treaties or laws of the United States has assumed `such a form that the judicial power is capable of acting on it.' . . . A declaration on rights as they stand must be sought, not on rights which may arise in the future, and there must be an actual controversy over an issue, not a desire for an abstract declaration of the law. The form of the proceeding is not significant. It is the nature and effect which is controlling." *Id.,* at 566-567, quoting *Osborn* v. *Bank of United States,* 9 Wheat. 738, 819 (1824) (citations omitted).

Applying this standard, we noted that the state court had concluded that the report of the Committee on Character and Fitness, which refused to issue a favorable certificate, should be sustained. The state court, therefore, considered the petitioner's petition "on its merits." 325 U. S., at 567. Although "no entry was placed by the Clerk in the file, on a docket, or in a judgment roll," *ibid.,* we found that the state court had taken "cognizance of the petition and passed an order which [was] validated by the signature of the presiding officer." *Ibid.* We stated:

> "Where relief is thus sought in a state court against the action of a committee, appointed to advise the court, and the court takes cognizance of the complaint without requiring the appearance of the committee or its members, we think the consideration of the petition by the Supreme ₄₇₉'₄₇₉ Court, the body which has authority itself by its own act to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy.
>
> "A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, in this Court." *Id.,* at 567-569 (footnote omitted).

On 22 December 2009, there was no law to the effect that Marie Assa'ad-Faltas may not advocate *pro se* in SC state courts. *Au contraire,* SC Code of Laws provided she *may* do so if she wishes:

> **SECTION 14-1-100. Rights in court shall not be affected by race or color.** Whenever authority has heretofore been conferred by law upon any free white person or persons to institute any suit or proceedings or to prefer any information or complaint in any matter, civil, penal or criminal, the same rights shall be enjoyed by and the same remedies shall be applicable to all persons whatsoever, regardless of race or color, **subject to the same conditions and none other.**
>
> **SECTION 40-5-80. Citizen may prosecute or defend own cause.** This chapter may not be construed so as to prevent a citizen from prosecuting or defending his own cause, if he so desires.
>
> HISTORY: 1962 Code Section 56-102; 1952 Code Section 56-102; 1942 Code Section 326; 1932 Code Section 326; Civ. P. '22 Section 282; Civ. C. '12 Section 3922; Civ. C. '02 Section 2819; G. S. 2167; R. S. 2295; 1721 (7) 173; 1868 (14) 97; 2002 Act No. 307, Section 2

Nor did anyone bring a case or controversy to SC S Ct to declare Marie Assa'ad-Faltas' rights under the above sections. Then-SC-Chief-Justice Toal's orders, whether designated "administrative" or not, were clearly "rules" *changing* rights and liabilities *for the future.*

SC S Ct' rule-making powers do not render it a free-standing legislature. SC S Ct's new rules must be submitted to both houses of SC's General Assembly. Even Congress' legislative veto was invalidated for failure of bicameralism. *INS* v. *Chadha,* 462 U.S. 919 (1983). All SC S Ct's capricious orders against Dr. Assa'ad-Faltas, including the frightening **"trial courts are directed to take immediate corrective action if she engages in disruptive conduct in the future"** in 24 October 2012 ORDER, are more akin to letters of marque than to *bona fide* rules. Otherwise, rules that set criminal penalties must be strictly construed in Dr. Assa'ad-Faltas' favor and require proof of a guilty *mens rea, Wooden* v. *U.S.,* 595 U.S. _ (2022). SC S Ct's 27 September 2017 ORDER in 2013-000863 is *so ambiguous* that *SC S Ct* granted original jurisdiction in SC Appellate Case 2019-000036 to clarify it, *so ambiguous* that SC Circuit Judges Jocelyn and Clifton Newman read it as allowing Dr. Assa'ad-Faltas to prosecute PCRs *pro se,* SC Circuit Judge Brown read it as allowing Dr. Assa'ad-Faltas to file by fax/email during the Pandemic emergency, and SC S Ct's previous clerk read it a allowing himself to converse with Dr. Assa'ad-Faltas by email in cases of necessity. Any purported ban on Dr. Assa'ad-Faltas' speaking even "in person" to judges *etc.* was interpreted even by Jurist Toal herself as admitting of exceptions as proven by the jurist's words in the 7 December 2016 transcript fortuitously available in SC S Ct's own SC Appellate case 2018-001290 file in SC's Attorney General's ("SCAG") Amended Appendix:

> [Page 5, lines 2-7] **I greeted her pleasantly, she greeted me pleasantly, *and I saw nothing untoward about her conduct.*** She has every right to be on the statehouse grounds and in public buildings subject to whatever limitations the people who keep the buildings have.

SC Chief Justice Beatty, then-SC Court of Appeals ("SC CoA") Chief Judge Lockemy, and SC Associate Justice James, separately exchanged pleasantries with Dr. Assa'ad-Faltas upon chance encounters.

Even if not discriminatory, absurd, and/or ambiguous, these rules' *purpose* supersedes their text. As explained in *INS* v. *Phinpathya,* 464 US 183, 198-9 (1984):

> It is a hornbook proposition that "[a]ll laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter." *United States* v. *Kirby,* 7 Wall. 482, 486-487 (1869). See also *Helvering* v. *Hammel,* 311 U. S. 504, 510 (1941); *United States* v. *Katz,* 271 U. S. 354, 362 (1926). In a case such as this, in which a literal interpretation of a statutory provision may indeed lead to absurd consequences, *supra,* at 197, we must look beyond the terms of the provision to the underlying congressional intent.

SC S Ct's *administrative* rules *presumably* aim **"to secure the just, speedy, and inexpensive determination of every action."** SCRCP 1. Filing by email is speedier and cheaper than paper filing; and justice is equal treatment of all, in *procedure* and substance. Thus, punishing Dr. Assa'ad-Faltas for *alleged bona*, not *mala, prohibita*, is an apotheosis of absurdity. **Take the remittitur story.** It should have issued on 29 December 2021 but did not and *may never have had* if Dr. Assa'ad-Faltas had not called Ms. Falin, Ms. Orr and/or Ms. Singleton. Behind Door A, Dr. Assa'ad-Faltas calls an SC CoA employee and reminds her of the remittitur; the remittitur issues; and all are happy. Behind Door B, Dr. Assa'ad-Faltas reads the 27 September 2017 ORDER absurdly, never calls, the remittitur never issues, and SC Appellate Case 2019-000708 is never closed. Behind Door C, Dr. Assa'ad-Faltas reads the 27 September 2017 ORDER as purpose-driven, calls, the remittitur issues; but Dr. Assa'ad-Faltas' accusers-judgers **insist on an absurd reading and commandeer seven and more employees to prepare affidavits, serve an RTSC, and appear for live testimony, all to achieve what?**

### CONCLUDING PERSONAL STATEMENT *AND REQUEST FOR ONE HOUR'S DELAY*

This Court saw Dr. Assa'ad-Faltas' courage and hopefully knows her compliments are as honest as her criticisms. In researching "judicial power means power to resolve cases or controversies," "rule of lenity," *etc.,* she was impressed that each of her current accusers-judgers had *elsewhere* written *brilliantly* on one or all those barriers to trying Dr. Assa'ad-Faltas or convicting her. They know better than **"the sole issue before the Court is her compliance, or lack of compliance, with the orders of this Court concerning the manner and method of her communications and filings with this Court."** Citing *Gompers,* without noting that it was a *genuine* case or controversy and hence distinguishable from *this* case about violating a letter of marque, is not a display of brilliance but of willingness to cheat as the lion cheats the gazelle in senet in that Ancient Egyptian ostracon on papyrus. Dr. Assa'ad-Faltas has no death wish but no sycophancy. She chose to be heard by herself or not at all. She will put a complete defense or none at all. If her accusers-judgers' sole aim is winning, she is willing to leave the field to them. If the better angels prevail, the RTSC would be dismissed without trial. If not, her conviction after an unfairly-truncated defense is assured. In either case, there is no need for the 22 March 2022 event. But if the 22 March 2022 event will still be, God willing, held, Dr. Assa'ad-Faltas asks that it be delayed *only one hour* to accommodate late-arising circumstances she wished to keep private.

Dr. Assa'ad-Faltas pleads with her accusers-judgers: **give me** *one minute* (or one second) **for each day of past 13 years of my life** *stolen* **from me in false criminal accusations.** Use those 80 hours **(or this 1.3 hour)** to read the actual record of what was done to me and to discuss my ideas on how to protect others from similar atrocities. You will derive more pleasure and profit from that than from trying to destroy what is left of me with legal slights of hand. God bless nonetheless in all cases.

### Certificate of Submission AND Certificate of Service AND of Copies

Submitted and served by hand-delivery and copied to: His Excellency AbdelRahman Raafat at abdelrahman.raafat@egyptembassy.net, Professors Erica Hashimoto at eh502@georgetown.edu, Daniel Ortiz at dro@virginia.edu, and Sean Andrussier at andrussier@law.duke.edu, and to Tim Griffith at tlgriffith@tlgriffith.com, Jessica Saxon at jsaxon@sccid.sc.gov, Robert Dudek at rdudek@sccid.sc.gov, and relevant others on 11 March 2022, all God so willing.

S/Marie-Thérèse Assa'ad-Faltas, MD, MPH, Applicant/Appellant *pro se*
P.O. Box 9115, Columbia, SC 29290    e-mail: Marie_Faltas@hotmail.com
Phone: (803) 783-4536     Cell: (330) 232-4164

*2021-08-25-02*

# The Supreme Court of South Carolina

RE:    Methods of Electronic Filing and Service Under Rule 262 of the South Carolina Appellate Court Rules

Appellate Case No. 2020-000447

---
ORDER
---

**(a) Purpose.**  Pursuant to Rule 262(a)(3) and (c)(3) of the South Carolina Appellate Court Rules (SCACR), this Court may by order establish methods for the electronic filing and service of documents.  Since the Order Relating to the Operation of the Appellate Courts during the Coronavirus Emergency has been rescinded, including the electronic methods of filing and service provided for by that order, the purpose of this order is to specify the permissible methods of electronic filing and service under Rule 262, SCACR.  For the purpose of this order, "Appellate Court" means the Supreme Court of South Carolina or the South Carolina Court of Appeals.

**(b)  Electronic Methods of Filing.**  Filings with an appellate court may be made electronically using the methods listed below.

**(1) Electronic Filing by Lawyers.**  Lawyers who are licensed to practice law in South Carolina may utilize OneDrive for Business to electronically submit documents for filing with the Supreme Court and the Court of Appeals, and *lawyers are strongly encouraged to use this method of filing*.  More information about this method, including registration and filing instructions, is available in the Attorney Information System (https://ais.sccourts.org/AIS) under the tab "Appellate Filings."

**(2) Filing by E-mail.**  Filings may be made by e-mail.  For the Supreme Court, the e-mail shall be sent to supctfilings@sccourts.org; for the Court of Appeals, the e-mail shall be sent to ctappfilings@sccourts.org.  This method may not be suitable for large documents, and if it becomes necessary to split a document into multiple parts, the e-mail shall identify the part being sent (i.e., Record on Appeal, Part 1 of 4).  A document filed by this method must be in an Adobe Acrobat file format (.pdf).

**(3) Faxing Documents.**  A document may be filed by an electronically transmitted facsimile copy.  The fax number for the Supreme Court is 803-734-1499.  The fax number of the Court of Appeals is 803-734-1839.  While this method is well suited for relatively small documents, depending primarily upon the limitations of the sending fax machine, it may not be possible to send large documents, such as a record on appeal, in a single transmission.  If it becomes necessary to split a document into multiple parts to make the fax transmission, a separate cover sheet should be used on each part to identify the document (i.e., Brief of Appellant, Part 1 of 4).  In the event, the facsimile copy is not sufficiently legible, the clerk of the appellate court may require the party to provide a copy by mail.

(c) **Filing Date and Payment of Fees for Documents Filed Electronically.** When filed using one of the methods specified in (b) above, a document transmitted and received by 11:59:59 p.m., Eastern Standard Time, shall be considered filed on that day. If a filing fee is required for the document, a check or money order for the fee must be mailed or delivered to the appellate court within five (5) days of the filing; the case name and the Appellate Case Number, if known, should be listed on the check or money order.

(d) **Electronic Service Using AIS E-mail Address.**

**(1)  Service on Another Lawyer.** A lawyer admitted to practice law in South Carolina may serve a document on another lawyer admitted to practice law in South Carolina using the lawyer's primary e-mail address listed in the Attorney Information System (AIS). For documents that are served by e-mail, a copy of the sent e-mail shall be enclosed with the proof of service, affidavit of service, or certificate of service for that document. Lawyers are reminded of their obligation under Rule 410(g), SCACR, to ensure that their AIS information is current and accurate at all times.1

**(2)  Service by an Appellate Court.** An appellate court may send an order, opinion or other correspondence to a person admitted to practice law in South Carolina using that lawyer's primary e-mail address in AIS.

**(3)  Service on Persons Admitted Pro Hac Vice.** For attorneys admitted pro hac vice under Rule 404, SCACR, service on the associated South Carolina lawyer using an electronic method permitted by this order shall be construed as service on the pro hac vice attorney; if appropriate, it is the responsibility of the associated lawyer to provide a copy to the pro hac vice attorney.

This order is effective immediately.

s/Donald W. Beatty_____C.J.

s/John W. Kittredge_____J.

s/Kaye G. Hearn_____J.

s/John Cannon Few_____J.

s/George C. James, Jr._____J.

Columbia, South Carolina
August 25, 2021

1 The primary AIS e-mail address for lawyers admitted to practice in South Carolina may be obtained using the search function at https://www.sccourts.org/attorneys/dspSearchAttorneys.cfm. Lawyers may update their AIS information at https://ais.sccourts.org/AIS.

Response to Errata Sheet for the Hearing Transcript of:

Dr. Marie Ass'ad-Faltas

Date of Hearing:     February 22, 2022

Appellate Case No.:  2021-000815


<u>Page & Line</u>          <u>Response to Errata Sheet</u>


Page 1              Change date from March 16, 2022 to March 22, 2022

                    Change Court of Appeals Chief Judge James E. Lockemy to Former Court of Appeals
                    Chief Judge James E. Lockemy

Page 4, line 15     Transcript stands as correct

Page 4, line 17     Change star chamber to Star Chamber

Page 8, line 20     Change judges stay close to judges take oath

Page 16, line 11    Change you as to U.S.

Page 17, line 14    Change judge's to judges'

Page 17, line 19    Change that sort of thing to that gives us food for thought


RECEIVED

MAR 0 9 2022

S.C. SUPREME COURT



STATE OF SOUTH CAROLINA }           Before the Supreme Court
                        }           of South Carolina
COUNTY OF RICHLAND      }           ORIGINAL


In the Matter of:       }           TRANSCRIPT OF RECORD
                        }           CORRECTED ORIGINAL
Marie Assa'ad Faltas,   }
                        }           Appellate Case No.
              Respondent.}            2021-000815
_____}


        A Hearing was held in the Courtroom of the Supreme

Court of South Carolina beginning at 1:30 p.m., on

Tuesday, February 22, 2022 to confirm the desire of the

Respondent to proceed *pro se* in an upcoming Rule to Show

Cause Contempt Action to be held on March 22, 2022.

        The Court consisted of Justice John W. Kittredge;

Justice Kaye G. Hearn; Justice John C. Few; Justice

George C. James, Jr.; and Former Court of Appeals Chief

Judge James E. Lockemy.

        The Office of the Attorney General was represented

by Donald J. Zelenka, Esquire.

        The Respondent appeared, *pro se*.

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

Ms. K.A. Snelling, CVR-M
Court Reporter for Office of Commission Counsel

2

INDEX TO EXAMINATION

Dr. Marie Assa'ad Faltas

        Examination by Justice Few ----------------------- 5


Certificate of Reporter ----------------------------- 22

RECEIVED

MAR 09 2022

S.C. SUPREME COURT

INDEX TO EXHIBITS


    There were no Exhibits Submitted during this Hearing

3

```
 1          (Whereupon, the Hearing commenced at 1:35 p.m.
 2   on the 22nd day of February, 2022)
 3       CLERK OF COURT:  All rise.
 4       JUSTICE KITTREDGE:  Please be seated.  Thank you.
 5   Good afternoon, we're on the record in the South Carolina
 6   Supreme Court, this is In the Matter of Dr. Marie Faltas,
 7   who is present.  Chief Justice Beatty is not sitting, and
 8   in his stead we're pleased to have Judge Lockemy with us.
 9   Thank you, sir, for sitting with us here.
10          The proceeding today arises from a Rule to Show
11   Cause Contempt Action against Dr. Marie Faltas.  Dr.
12   Faltas is present, as is Mr. Zelenka from the Attorney
13   General's Office on behalf of the movant.  The limited
14   purpose of today's hearing is to confirm what appears to
15   be Dr. Faltas' desire and decision to proceed pro se in
16   this contempt proceeding.
17          And Dr. Faltas, we thank you, ma'am, for being here
18   today.  We understand from your submissions that you wish
19   to represent yourself, and we understand that and respect
20   that.  The law requires that a Court ensure that an
21   accused is properly informed of her rights before waiving
22   the right to legal counsel and granting a request to
23   proceed pro se, in other words, self-representation.
24          Dr. Faltas, you're going to be asked questions from
25   the Court, primarily, if not exclusively, from Justice
```



4

1  Few.  And it's necessary for us to ensure that

2  whatever decision you choose to make, you do so freely

3  and voluntarily of your own free will.

4      I will tell those in the Courtroom if you wish to

5  remove your mask, you're free to do so at this time.

6      DR. FALTAS:  Judge --

7      JUSTICE KITTREDGE:  It's also necessary that I place

8  you under oath before we begin the questions about your

9  decision for legal representation or your desire to

10 proceed *pro se*.  So at this time, Dr. Faltas, I'd ask if

11 you'd raise your right hand please, ma'am?

12     DR. FALTAS:  No, sir, I do not swear for religious

13 reasons.  And I also handed to the Clerk a motion for

14 this hearing, and it includes documented that both my

15 knees are fractured.  So I need at least permission to

16 address the Court from a seated position, unless this is

17 going to be a torture Star Chamber.

18     JUSTICE KITTREDGE:  No, ma'am, you can remain seated

19 the whole time, there's no reason for you to stand.  And

20 we will certainly review the motion that you have filed

21 with the Court.

22     Do you affirm that the statements and testimony you

23 give to the Court today will be truthful?

24     DR. FALTAS:  Yes, sir.

25     JUSTICE KITTREDGE:  Thank you, ma'am.  That is

RECEIVED
MAR 03 2022
S.C. SUPREME COURT

1    sufficient for the oath, so now the oath has been

2    administered.  At this time I'll turn it over to Justice

3    Few.

4           Justice Few?

5    DR. FALTAS - EXAMINATION BY JUSTICE FEW:

6    Q:    Dr. Faltas, as you know, you have the right to

7    be represented by an attorney.  As you also know, you

8    have the right to represent yourself.  As Justice

9    Kittredge mentioned, you have fairly clearly indicated

10   that you wish to represent yourself in this contempt

11   proceeding.  To represent yourself however you must make

12   a valid waiver of your right to have an attorney

13   represent you.

14          Now I'm going to talk to you about some of the

15   things that we need to talk about today, and I want you

16   to be cooperative with me.  Because if representing

17   yourself is what you want, then the purpose of this

18   hearing is to enable you to do that.  I'm aware that you

19   are very familiar with all of these things that we're

20   going to talk about because you've been through these

21   hearings before.

22          But I'm going to talk to you about some of the

23   things that I and the other members of this Court, first,

24   must ask you in order to know after you've heard

25   everything that I'm going to talk to you about do you

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

<u>Dr. Faltas - Examination by Justice Few</u>                6

1    still want to represent yourself?  And second, if you

2    want to represent yourself we need to know that you are

3    making a valid waiver to your right to counsel.

4        So there are several subjects that are important to

5    your waiver of your right to counsel, and I'm going to

6    discuss those with you now.  Your educational background

7    is important to this question.  I am aware that you are

8    highly educated.  In fact, you have multiple degrees

9    including a Master's in Public Health from the University

10   of North Carolina.  You have a graduate degree in

11   medicine from a university in Cairo.  You have, in fact,

12   practiced medicine professionally, and you actually

13   taught preventative medicine at the University of South

14   Carolina School of Medicine.  This educational background

15   indicates that you are a highly intelligent woman.  And I

16   will note that you have listed that you are self-employed

17   as a consultant in medical legal issues.  And you have

18   told the Court before that you speak four languages.

19       Your understanding of legal principles and

20   procedures is important to this question.  We are aware

21   that you have been involved in extensive litigation over

22   many years at all levels of Court here in South Carolina,

23   both federal and state.  From my review of those cases

24   over the years, and from my review of the motions and the

25   returns and the other documents that you have filed in



<u>Dr. Faltas - Examination by Justice Few</u>                    7

1   this case it is my impression that you have a broad

2   and deep understanding of legal principles and

3   procedures.

4        Your mental health is important to this question.

5   In one of the cases that you have currently on appeal

6   here at this Court you were interrogated by Judge Marion

7   Hanna about whether you had ever been evaluated for

8   mental illness.  You told Judge Hanna on March the 28th,

9   2011 that you had been evaluated for mental health issues

10  and you have no mental health issues.

11       Now Dr. Faltas, so far is there anything that I have

12  said that you disagree with?

13       **A:**  Yes, sir.  You said that I have been through

14  these hearings, in the plural, before.

15       **Q:**  Excuse me?

16       **JUSTICE KITTREDGE:**  Just one second.  I want to make

17  sure the Court Reporter can hear because we're on the

18  record.  Can you hear?

19       **JUDGE LOCKEMY:**  Probably need to move that

20  microphone up.

21       **JUSTICE KITTREDGE:**  Which microphone is yours, Madam

22  Court Reporter?

23       **COURT REPORTER:**  The silver one, if she could --

24       **JUSTICE KITTREDGE:**  All right, let's try to move

25  both of them closer.  And if you need assistance in doing

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

1    that we'll certainly accommodate you, Dr. Faltas.

2         **JUSTICE FEW:**  Let's move the other one up too.

3         **JUSTICE KITTREDGE:**  Madam Clerk, let's see if we can

4    move the other one closer to Dr. Faltas?  (Microphones

5    moved closer to Dr. Faltas).

6         Q:    Okay.  Now I didn't hear what you said, so

7    could you repeat?

8         A:    You're asking me if there is something that

9    needs correction.  And I said yes, there are things that

10   need correction.

11        Q:    Tell me what it is?

12        A:    Okay.  First you said I have been through those

13   hearings, in the plural, before.  I have not.  I have

14   been through only one hearing where Judge then South

15   Carolina Circuit Judge Barber gave me the Faretta

16   inquiry.  And I consider it a travesty, that he admitted

17   that he agrees that I have a constitutional right to

18   represent myself, but he said something to the effect

19   that his hands are tied because of what you all ordered.

20        I think judges take oath to the Constitution, not to

21   the South Carolina Supreme Court.  And I am indignant at

22   what has been done to me.  I think it is no better than

23   Jim Crow when you have had at least 400 lawyers who

24   either were suspended definitely, publicly reprimanded,

25   indefinitely suspended, disbarred, debarred.  And all 400

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

Dr. Faltas - Examination by Justice Few                    9

1    of them, including one who had consumed drugs or

2    alcohol and killed somebody, and you did not take their

3    rights to speak for themselves.

4         I consider it a violation of my human rights, basic

5    human rights, forget about Faretta and all that stuff,

6    it's a basic human right to speak for oneself.  And I

7    consider what you're doing to me Jim Crow revisited on

8    lawful immigrants.  And because my conscience requires me

9    to tell the truth, that is part of the truth, so I've

10   been only to one hearing where the Faretta --

11        Q:   So I used the plural when I described the

12   Faretta Hearings that you had been through before, and

13   you've corrected me that you've only been through Faretta

14   one time?

15        A:   Yes, sir.

16        Q:   Okay.

17        A:   The other thing is you said Marion Hanna

18   questioned me.  Marion Hanna is obsessed, obsessed with

19   trying to get people to get mentally examined.  And

20   that's why I made the motion for your Court to take

21   possession of her two so-called novels which are easily

22   the worst ever written in English language.  Because that

23   is morbid.

24        And that is really another travesty that your Office

25   of Disciplinary Counsel did something to her, but it was



Dr. Faltas - Examination by Justice Few          10

1    -- you are supposed to protect the public from women

2    like her.  Just as you're supposed to protect the public

3    from incompetent and ineffective and selfish and

4    treasonous lawyers.  And I do not think you're rising to

5    this duty.

6         And you are wanting me to suppress my conscience, I

7    will not do that.  I will not suppress my conscience.

8    Now the reason I told Marion Hanna that I, and that was

9    --

10        Q:    Ma'am, the reason I brought up Judge Hanna was

11   simply to --

12        A:    She's not a judge, I'm sorry.

13        Q:    -- simply to point out the context in which you

14   made the statement that you had been evaluated and you

15   didn't have any mental health issues.

16        A:    The reason --

17        Q:    Let me follow up on that if you don't mind?

18   I'm going to ask you three questions right here, these

19   are yes or no questions.  Depending on your answers an

20   explanation might be warranted.  But I would like if you

21   don't mind, would you give me a yes or no answer to these

22   questions.  And then we'll see whether an explanation is

23   necessary.

24        A:    Yes, sir.

25        Q:    Have you taken any alcohol, medication, or



MS. K.A. SNELLING, CVR-M
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

1  drugs in the last 24 hours?

2       A:    Sir, I take, every day I need to take a

3  replacement thyroid hormone.

4       Q:    So medication.  And it's by prescription?

5       A:    Yes, sir.

6       Q:    And when you take that medication have you

7  taken it consistent with the prescription that was given

8  to you by the doctor who prescribed it?

9       A:    I have had that condition for 42 years now.

10  And it is just, it's almost equivalent of insulin for

11  diabetics.

12       Q:    But let me repeat my question, and I want to

13  remind you this is a yes or no question.  When you've

14  taken this medication that you just referred to over the

15  last few weeks, have you taken it according to the

16  prescription that the doctor gave you?

17       A:    Yes, sir, every day.

18       Q:    Okay.  Now how about alcohol or any illegal

19  drugs?

20       A:    (Moves head from side to side).

21       Q:    I understand.  You're shaking your head no.

22       A:    No, no.

23       Q:    Okay.  So are you under the influence today of

24  any drugs or medication or alcohol?

25       A:    No, sir.

RECEIVED

MAR 09 2022

S.C. SUPREME COURT

Dr. Faltas - Examination by Justice Few          12

1     Q:   Have you been evaluated for your mental

2   health since that incident that I referred to where you

3   told -- you mentioned that you'd been evaluated before,

4   have you been evaluated since?

5     A:   Yes, sir.

6     Q:   Did those evaluations as far as you know reveal

7   any mental health concerns?

8     A:   At different times I was very depressed.

9     Q:   Depressed?

10     A:   Depressed, yes.  And the depression happens

11   even classically in people who have been wrongly

12   incarcerated.  And once they are released there is a

13   euphoria of the release, but after that when you look

14   back on how much of your life is lost you do get

15   depressed.  To the day, to the day, on 22 February, 2010

16   I started the five-day jury trial before Judge Clifton

17   Newman.

18     Q:   Ma'am, let's stay focused, okay?  And we'll try

19   to get through this as simply and easily as we can.  I'm

20   asking, my question for you is since March of 2011 have

21   you been evaluated for your mental health?

22     A:   I have been depressed since then.

23     Q:   Okay.  But --

24     A:   But it doesn't affect my ability to understand

25   things.  And most importantly, sir, one of the cures for

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

Dr. Faltas - Examination by Justice Few          13

1   depression is creativity.  And one of the things, and

2   I tell the joke which is true, that I got admitted to

3   medical school in Egypt at age 17 is because I proved I

4   was superbly qualified to be an engineer.  So one of the

5   things that cure my depression are the engineering

6   inventions that I work on on my own and that this farce

7   is taking me away from.

8       Q:   So I think what you said a second ago is that

9   the depression that you just mentioned is not affecting

10  your ability to understand.  Are there any other mental

11  issues right now that are affecting your ability to

12  understand?

13      A:   I don't think they affect my ability.  But I'm

14  very afraid of you all, I really am.

15      Q:   But you do have the ability to understand?

16      A:   Absolutely.

17      Q:   Okay.  Now what I'm going to do, it's also

18  important to a valid waiver of counsel that you be aware

19  of the dangers of representing yourself, and that you

20  understand how and in what way a lawyer can help you on

21  many of these issues.

22      On February 17th of this year in a document that you

23  called Respondent's Emergency Response to this Court's

24  February 22nd order, which is the order -- I'm sorry,

25  February 15th order, which is the order setting this



MS. K.A. SNELLING, CVR-M
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

Dr. Faltas - Examination by Justice Few        14

1    hearing, you wrote "Dr. Assa'ad Faltas reiterates

2    that she heard the dangers of self-representation

3    previously recited and understands what the judges mean

4    by them."

5        I have no doubt that you understand the dangers of

6    representing yourself, but I'm still going to go over

7    some of them now.  And at the end I'm going to ask you if

8    you understand all those dangers.  There are

9    jurisdictional issues at stake here, and you have raised

10   some of these jurisdictional issues already.  A lawyer

11   could help you to better understand those jurisdictional

12   issues.

13       You have raised recusal issues, there may be other

14   issues that you want to raise regarding recusal.  And a

15   lawyer could help you to better understand those issues.

16       In every proceeding, certainly this one, there are

17   going to be procedural issues, and you have already

18   raised a few of the procedural issues.  A lawyer could

19   help you to better understand those procedural issues.

20       We have to operate in this Courtroom by rules of

21   Court, they bind us, they bind Mr. Zelenka, and they will

22   bind you.  A lawyer could help you better to understand

23   those rules of court and what conduct is permitted and

24   what conduct is not permitted according to those rules.

25       In every proceeding such as the one we're going to

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

Dr. Faltas - Examination by Justice Few                    15

1  have there are going to be evidentiary issues.  A

2  lawyer could help you to better understand those

3  evidentiary issues.

4       There are substantive issues regarding contempt, and

5  those relate particularly to what the state would have to

6  prove and what this Court would have to find in order for

7  you to be found in contempt of court.  There may be

8  defenses that you could assert to the contempt charge.  A

9  lawyer could help you to understand better all of the

10 substantive issues, including whether or not there are

11 any defenses to the charge of contempt.

12      There are constitutional issues that might be at

13 stake.  In fact, you have already raised constitutional

14 issues and you've done it here today.  And I just want to

15 make sure you understand that there are many times when

16 even the judges on this Court don't understand the

17 constitutional issues, so a lawyer could certainly help

18 you to better understand those constitutional issues.

19      And if you are found guilty of contempt, there

20 could, there are going to be punishment issues.  And as

21 you are aware, if the Court finds you guilty of Contempt

22 of Court the Court may choose to fine you, may choose to

23 place other restrictions on you, and even imprison you

24 for a term of up to six months.  A lawyer could help you

25 to understand the potential consequences of a finding of



1  contempt and help you to mitigate or perhaps even

2  eliminate those consequences.

3      Now is there anything that I just explained to you

4  in the way of the dangers of self-representation that you

5  do not understand?

6      A:   What I do not understand is whether you're

7  talking about a hypothetical, rarified, romanticized

8  lawyer who maybe graduated top of her class from Yale, or

9  the average lawyer that is likely to be imposed on me,

10  who works against me, who sometimes some lawyers have

11  been described, at least one by U.S. District Judge

12  Gergel as exhibiting stunning ignorance of the law.  So I

13  do not understand whether you mean that all lawyers have

14  the same ability or you agree that there is a range of,

15  number one, competence, and number two, devotion to the

16  client?

17      Q:   As far as I know to answer your question, as

18  far as I know there's really been no discussion about who

19  the lawyer would be if you chose to be represented by a

20  lawyer.  And as you point out, there is a spectrum of

21  quality of lawyering.  We would certainly hope that we

22  would find someone who could do what I just talked to you

23  about, which is to help you to better understand all of

24  the issues that I discussed which are what I was

25  referring to generally as the dangers of self-



**MS. K.A. SNELLING, CVR-M**
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

<u>Dr. Faltas - Examination by Justice Few</u>     17

1   representation.

2          Now setting the quality of the lawyer aside, do you

3   understand all of the dangers of self-representation that

4   I just went over with you?

5          A:    I even understand some that you have not

6   mentioned.

7          Q:    So I understand your answer to be yes, and I

8   understand more than what you were telling me?

9          A:    Yes.

10         Q:    Okay, good.  Now do you have any questions for

11  me about your right to counsel or your right to represent

12  yourself?

13         A:    I wanted to tell you that I also understand

14  that the judges' perception that the lawyer is better or

15  smarter or whatever than the *pro se* person is itself an

16  advantage -- a disadvantage and a risk of self-

17  representation.  And to that extent, the same brilliant

18  legal argument could come from a lawyer and you would say

19  oh, that's brilliant, that's new, that gives us food for

20  thought.  But it would come from me and you would say

21  it's frivolous and say no more than that.

22         And I've had a natural experiment.  Do you know what

23  a natural experiment is?

24         Q:    Well ma'am, I'm going to want us to -- we're

25  almost done, and you're doing great.  But I want to make

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

**MS. K.A. SNELLING, CVR-M**
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

1    sure we stay focused.  Do you have any other

2    questions that you want to ask me?

3         A:   Yes.  Do you promise to be as receptive to my

4    *pro se* advocacy as you would be to a lawyer considering

5    that my objective record so far is better than a lawyer?

6    For one thing, for one thing I *pro se*, thank God, won a

7    PCR case which withstood the state's --

8         Q:   So let me answer your question.  It's really

9    not my role to make promises here.  But I will remind

10   you, as I'm sure you know, that it is our duty to do what

11   you just said.  It's actually part of the oath that we

12   all take as judges to listen fairly to every person who

13   comes in here to raise a position.  So that's my answer

14   to your question.  Are there any other questions that you

15   have?

16        A:   Yes.  In this proceeding you are my accusers.

17   Do I have the right to confront you?  And I have a

18   suspicion that you want to impose a lawyer on me because

19   you want that lawyer to force me to give up that choice.

20        Q:   My answer to your question is that that is one

21   of the procedural and constitutional issues that could be

22   raised at the trial of these contempt charges, and a

23   lawyer could help you to better understand those

24   procedural issues.  Are there any other questions that

25   you have?

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

<u>Dr. Faltas - Examination by Justice Few</u>          19

1      A:   I'm sorry, sir, you have not answered my

2  question.

3      Q:   Ma'am, you might not be satisfied with my

4  answer, but I gave you my answer.  Now I'm going to ask

5  you again, are there any other questions that you have?

6      A:   Yes.  If you could please look at the motion

7  that I just served?

8      Q:   As Justice Kittredge indicated at the beginning

9  of the hearing, we will look at the motion.  Yes, ma'am.

10  Are there any other questions?

11      A:   Will I be allowed to require discovery from Mr.

12  Zelenka, and will you promise to ensure that he responds

13  to discovery within the limited time that I have?  I mean

14  what I'm trying to --

15      Q:   I can answer that question by telling you again

16  that's one of the procedural issues that could be raised.

17  And it is our duty to rule according to the law, and so

18  we will follow that duty.  So are there any other

19  questions?

20      A:   No, thank you.  And thank you for being

21  pleasant today.

22      Q:   All right, ma'am.

23      A:   I really was afraid that if I smiled you'd say

24  you're taking the procedure as a joke, you're in

25  contempt.  If I didn't smile you would say she has a



**MS. K.A. SNELLING, CVR-M**
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

Dr. Faltas - Examination by Justice Few          20

1   hostile look on her face, she's in contempt.  Because

2   this is exactly, exactly what Marion Hanna did to me.

3   And for 12 years you all failed your duty to protect the

4   public from that.  So I was afraid of you.  But I want to

5   thank you for being pleasant.

6       Q:    So having heard everything that I had to say to

7   you, do you want this Court to appoint a lawyer for you

8   or do you want to represent yourself?

9       A:    I God willing want to represent myself more

10  than ever.  However, having reviewed Faretta, the Court

11  does have the right to appoint standby counsel over my

12  objection.  So if you want to appoint standby counsel you

13  could do that, it would be over my objection.  But I just

14  was, you know, wanting you to have your heart at ease

15  about having done everything possible.

16      Q:    So to be clear, in response to what you just

17  said, you would object to standby counsel?

18      A:    But Faretta says the Court has the right to do

19  standby counsel over --

20      Q:    But let me make sure I have this, you object to

21  it though, right?

22      A:    Yes.

23      Q:    Okay.  Now I want to ask you one more question.

24  Has any person or any other circumstance put pressure on

25  you or forced you in any way to make the decision to

<u>Dr. Faltas - Examination by Justice Few</u>                21

1   represent yourself, or in your mind can you tell me

2   that you are doing this freely and voluntarily?

3        A:    Freely and voluntarily.

4        JUSTICE FEW:  Okay.  Thank you, ma'am.

5        DR. FALTAS:  Thank you.

6        JUSTICE KITTREDGE:  Thank you, Justice Few.

7            And Dr. Faltas, thank you, ma'am.

8        DR. FALTAS:  Thank you.

9        JUSTICE KITTREDGE:  I will on behalf of the entire

10  Court echo what Justice Few said about our duty to treat

11  all litigants, represented and unrepresented fairly,

12  equally, and in accordance with the law, both

13  procedurally and substantively.

14       Are there any questions from other members of the

15  Court?  (No response).  Hearing none, that concludes this

16  matter.  Thank you all for being here today.  We'll issue

17  an order in accordance with our ruling.

18       (Whereupon, the hearing concluded at 2:01 p.m. on

19  the 22nd day of February, 2022)

20

21

22   RECEIVED

23   MAR 0 9 2022

24   S.C. SUPREME COURT

25

**MS. K.A. SNELLING, CVR-M**
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

<u>CERTIFICATE OF REPORTER</u>

I, the undersigned K.A. Snelling, Official Court Reporter for the Office of Commission Counsel and Notary Public for the State of South Carolina, do hereby certify:

That the foregoing is a true, accurate, and complete transcript of record of all the proceedings had and any evidence introduced in the captioned matter on the 22nd day of February, 2022.

I do further certify that I am neither related to nor counsel for, nor interest to any party hereto.

IN WITNESS WHEREOF, I have hereunto affixed my hand this 23rd day of February, 2022.

_____
Kathy A. Snelling, CVR-M
Certified Court Reporter

Notary Public for South Carolina
My Commission Expires: May 16, 2028

RECEIVED
MAR 09 2022
S.C. SUPREME COURT

**MS. K.A. SNELLING, CVR-M**
Supreme Court, State of South Carolina
Office of Commission Counsel
1220 Senate Street, Suite 111, Columbia, South Carolina 29201

# The Supreme Court of South Carolina

In the Matter of Marie Assa'ad Faltas, Respondent.

Appellate Case No. 2021-000815

---

### ORDER

---

This matter came before the Court for a *Faretta*[1] hearing on February 22, 2022, after Respondent repeatedly expressed in her various writings her desire to proceed *pro se* and waive counsel in this contempt matter for which a Rule to Show Cause hearing is scheduled before this Court on March 22, 2022. The *Faretta* hearing proceeded on the record with the Court fully advising Petitioner of her right to counsel and the dangers and disadvantages of self-representation. Respondent remained persistent that she wished to proceed *pro se* in this matter.

The Court is firmly convinced that Respondent is fully aware of her rights, as well of the dangers of self-representation. The Court is further firmly convinced that Respondent's decision to proceed *pro se* was made intelligently and voluntarily.

Further, Respondent advised the Court she would object to the appointment of stand-by counsel. The Court respects Respondent's decision in this regard. Accordingly, we grant Petitioner's request to proceed *pro se* in this matter and decline to appoint stand-by counsel at this time.

IT IS SO ORDERED.

_____ A.C.J.

_____ J.

_____ J.

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).



_____ J.

_____ A.J.


Columbia, South Carolina
February 25, 2022


cc:
Marie Assa'ad Faltas
Donald J. Zelenka

# The Supreme Court of South Carolina

In the Matter of Marie Assa'ad Faltas, Respondent.

Appellate Case No. 2021-000815

---

### ORDER

---

Respondent has filed an emergency motion seeking reconsideration of the Court's March 2, 2022 order.  The motion is denied.  Respondent further requests the Court delay her March 22, 2022 criminal contempt hearing by one hour.  Respondent's request is denied.  The criminal contempt hearing shall proceed as scheduled on March 22, 2022, at 10:00 a.m. in the Supreme Court Courtroom.

_____ A.C.J.

_____ J.

_____ J.

_____ J.

_____ A.J.

Columbia, South Carolina
March 15 , 2022

cc:
Donald J. Zelenka, Esquire
Marie Assa'ad Faltas