**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| RICHARD ALEXANDER MURDAUGH, <br><br> Plaintiff, <br><br> *Versus* <br><br> D. SHANE KITCHENS, CJM, <br> *In his official capacity as Interim Director* <br> *Alvin S. Glenn Detention Center, Richland* <br> *County Government,* <br><br> Defendant. | C.A. No. 3:22-cv-00608-CMC <br><br><br> **SUPPLEMENTAL MEMORANDUM IN** <br> **SUPPORT OF** <br> **MOTION FOR PRELIMINARY** <br> **INJUNCTION** |

Plaintiff, Richard Alexander Murdaugh (Murdaugh), a pre-trial detainee at the Alvin S. Glenn Detention Center (ASG),  through counsel, submits this Supplemental Memorandum in support of his motion for a preliminary injunction [ECF No. 7] to prevent the disclosures of intercepted telephone communications between Plaintiff and others in response to public records requests because such disclosures are prohibited by the federal wiretapping statute, Section 2520(b) of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. § 2520(b).

**RECENTLY OBTAINED INFORMATION**

This Supplemental Memorandum discusses information recently obtained from two affiliated companies, Amtel and Customer Service of America (CSA), that record and retain inmate telephone calls at ASG.

On March 30, 2022, Murdaugh served a document subpoena on Amtel requesting the following:

1. All agreements or contracts between You and Richland County to provide inmate telecommunication services, including telephone calls and the recording of the same, effective from January 1, 2021 to the present.

Page 1 of 7

2. All agreements or contracts between You and any third party, including Customer Service of America, in which You subcontract out all or a portion of the services You agreed to provide to Richland County and/or ASG pursuant to an agreement or contract produced in response to Request No. 1.

3. All policies, procedures, or guidelines regarding the recording of inmate telephone calls at the Alvin S. Glenn Detention Center from January 1, 2021 to the present. All policies, procedures, guidelines, and other documents setting forth how an individual or agency requests access to the inmate telephone call recordings; the manner or process for granting such access; and whether such access is limited or unrestricted.

4. All documents, records, and logs identifying any individual or agency who accessed any recording of any inmate's telephone call at the Alvin S. Glenn Detention Center from January 1, 2021 to the present.

5. All documents, records, or logs identifying any individual or agency who accessed any recording of Richard Alexander Murdaugh's telephone calls at the Alvin S. Glenn Detention.

6. All documents, records, or logs identifying each time an officer, employee, or person on behalf of the Alvin S. Glenn Detention Center accessed a recording of an inmate's telephone call since January 1, 2021.

*See* Ex. A, Declaration of Daphne Greve, (hereinafter Greve Decl.), Ex. 1.

Murdaugh also served the same document subpoena[1] upon CSA on March 30, 2022. Greve Decl. Ex. 2.

On April 15, 2022, Amtel and CSA provided responses to the subpoenas. *See* Id. Ex. 3 (Amtel's Response) and Ex. 4 (CSA's Response). Amtel and CSA did not produce any documents in response to items 1 through 3. Instead, Amtel and CSA provided the following written explanations.

In response to Item 1, requesting a copy of any contract with ASG, Amtel and CSA state:

Contract between AmTel and Alvin S. Glenn Detention center expired 11/6/2019 and has been month to month since expiration.

---

[1] The only difference between the two subpoenas is Item 2, which requests agreements between Amtel and CSA.

Greve Decl. Exs. 3-4.

Responding to Item 3, requesting policies, procedures, and guidelines pertaining to the recording of inmate calls and access to these calls, Amtel and CSA state:

> All phone calls are recorded except for privileged calls between an inmate and an attorney. Any other non-recorded calls would have to be requested through us on letterhead.

> Any employee of AmTel/CSA has access to inmate telephone recordings. Anyone needing access to recordings would have to contact us and need approval through the operations manager to give access to said recordings. If approved, we would create a username and password for them to gain access to the website and listen to recordings for that specific facility only. The login is limited to call history and live monitoring; any other functions are strictly for AmTel/CSA employee use.

Id.

AmTel and CSA produced activity logs of all users who listened to recorded telephone calls of inmates at ASC from January 1, 2021, until March 14, 2022. Amtel and CSA also produced activity logs of all users who listened to Alex Murdaugh's recorded telephone calls. These activity logs were produced in Excel format in response to Items 4-6. This data establishes that ASG inmate telephone calls are being recorded and monitored almost exclusively for criminal investigative purposes by law enforcement agencies that are not involved in the operation of ASG. In addition, Plaintiff's telephone calls were monitored exclusively by outside law enforcement agencies for criminal investigative purposes.

From January 1, 2021, until March 14, 2022, there were a total of 16,436 inmate recorded calls that were monitored. Of this total, 15,057 of these calls, or 91.55%, were monitored by individuals affiliated with the following law enforcement agencies: Richland County Sheriff's Department, Columbia Police Department, SLED, Forest Acres Police Department, USC, Camden Police Department, Fifth Circuit Solicitor's Office, and the South Carolina Attorney General's

Office. Only 631 inmate recorded calls, or 3.84%, were monitored by individuals associated with ASG. There were another 758 inmate calls, or 4.61%, that were monitored using credentials that were not identified by Amtel and CSA. Greve Decl. Ex. 5. [2]

Plaintiff's recorded telephone calls were monitored 417 times. Individuals associated with the South Carolina Attorney General's Office monitored 410 of these calls and the remaining seven calls were monitored by individuals affiliated with the Fifth Circuit Solicitor's Office. None of Plaintiff's calls were monitored by any individual affiliated with ASG. Id. Ex. 7.[3]

## ARGUMENT

I.  <u>The law enforcement ordinary course of business exception does not apply because Amtel and CSA are not under contract with Richland County and are not being supervised by a law enforcement officer.</u>

Title III was amended in 1986 to permit private contractors to monitor interceptions of communications if such personnel are acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception. S. REP. 99-541, 31, 1986 U.S.C.C.A.N. 3555, 3585. Specifically, Section 2518(5) provides "An interception under this chapter may be conducted in whole or in part by Government personnel, or by an individual *operating under a contract* with the Government, *acting under the supervision of an investigative or law enforcement officer* authorized to conduct the interception." (emphasis added).

---

[2] The activity log data was formatted in Excel to identify the total number of calls accessed by individual log-in credentials. The data for each log-in credential was tallied and compared to the total of calls monitored to derive at a percentage. *See* Greve Decl. ¶¶ 8-9. These percentages are reported in summary form. Id. Ex. 6.  Amtel and CSA identified the individuals, along with their agency affiliation, who have been issued log-in credentials at ASG. Id. Ex. 5.

[3] The summary tabulation for the activity log of who listened to Plaintiff's calls was performed using the same methodology as was used for the activity log for all inmates. Greve Decl. ¶¶ 11-12.

First, Amtel and CSA do not have a contract with Richland County or ASG. Amtel's contract with ASG terminated on November 6, 2019. *See* Greve Decl. Exs. 3-4. Amtel and CSA are obviously providing telephone service at ASG. However, Amtel and/or CSA appear to be compensated for this service by charging fees for collect calls placed by the inmates.[4] In addition, Amtel and CSA are clearly not operating under the supervision of ASG officials. Rather, as explained in their written responses, Amtel and CSA determine who can access to the recorded telephone calls. Amtel and CSA state: "[a]nyone needing access to recordings would have to contact us (Amtel/CSA) and need approval through the operations manager to give access to said recordings." Id. Exs. 3-4. Moreover, there are no restrictions on Amtel and CSA employee access to the inmate telephone recordings at ASG.  Id.

Because Amtel and CSA are not operating under a contract with ASG and are not being supervised by anyone at ASG, Section 2518(5) allowing law enforcement to use private contractors is not applicable.

II. <u>The Inmate Recordings are being used almost exclusively for criminal investigations, unrelated to jail operations and security.</u>

The inmate telephone recordings at ASG are being monitored almost exclusively for criminal investigative purposes unrelated to jail operations. Approximately 91.55% of the total monitored calls from January 1, 2021, to March 14, 2022 were monitored by law enforcement agencies that are not involved in maintaining safety and security at ASG. Only 3.84% of the calls were monitored by ASG personnel. This is less than the number of calls monitored by individuals with credentials not associated with any law enforcement agency, and presumably employed by

---

[4] The undersigned has paid more than $100 to CSA for this telephone service.

Amtel and/or CSA. *See* Greve Decl. Ex. 6. Furthermore, every single one of Plaintiff's calls was monitored by outside law enforcement agencies. Id. Ex. 7.

When the monitoring is focused on investigating individual inmates, rather than being used as a part of a comprehensive safety and security program, the law enforcement "ordinary course of business" exception is not applicable. *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999); *United States v. Green*, 842 F. Supp. 68, 73 (W.D.N.Y. 1994), *aff'd sub nom. United States v. Workman*, 80 F.3d 688 (2d Cir. 1996).

Here, the user activity data establishes that all inmate calls are being recorded and monitored almost exclusively for criminal investigative purposes unrelated to a comprehensive jail safety and security program. None of Plaintiff's recorded calls were monitored by anyone affiliated with ASG. Instead, every call was monitored by someone using the credentials issued to employees of the South Carolina Attorney General's Office and the Fifth Circuit Solicitor's Office. For these reasons, the general law enforcement ordinary course of business exception is not applicable. As a result, the inmate recordings at ASG, and specifically the recordings of Plaintiff Murdaugh's telephone communications, are being "intercepted" within the meaning of the federal wiretapping statute.

III. <u>The release of ASG inmates' recorded telephone conversations to the public exceeds the scope of expressed or implied consent</u>.

The wiretapping statute permits the interception of telephone conversations when one party to the conversation has given prior consent, either expressly or impliedly. Admittedly, inmates at ASG are informed that all calls are subject to recording and monitoring. However, inmates are not informed that the recorded calls may be released to the general public and/or the media. Moreover, there is no basis to conclude that Plaintiff, or any other inmate, impliedly consented for the recorded calls to be used for any reason other than legitimate law enforcement purposes. For

the reasons previously argued, the public disclosure of these intercepted telephone communications is prohibited. *See* Pl's. Reply in Supp. at 6-8 , ECF No. 31.

## CONCLUSION

Murdaugh respectfully requests this Court enter a preliminary injunction prohibiting the disclosure of  intercepted telephone communications between Plaintiff and others to anyone in response to a records request or for any other purpose except as expressly permitted by Section 2517(1)-(3) of Title III.

Respectfully submitted,

By:     s/ *James M. Griffin*
        James M. Griffin, Esq., Fed. ID No. 1053
        Margaret N. Fox, Esq., Fed. ID No. 10576
        Griffin Davis, LLC
        4408 Forest Dr., Suite 300
        P.O. Box 999 (29202)
        Columbia, South Carolina, 29206
        (803) 744-0800
        jgriffin@griffindavislaw.com
        mfox@griffindavislaw.com

        s/ *Richard A. Harpootlian*
        Richard A. Harpootlian, Esq., Fed. ID No. 1730
        RICHARD A. HARPOOTLIAN, P.A.
        1410 Laurel Street (29201)
        Post Office Box 1090
        Columbia, South Carolina 29202
        (803) 252-4848
        rah@harpootlianlaw.com

        *Attorneys for Richard Alexander Murdaugh*

May 3, 2022
Columbia, South Carolina