IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Richard Alexander Murdaugh,<br><br>Plaintiff,<br><br>vs.<br><br>Washava Moye, In her official capacity as Interim Director Alvin S. Glenn Detention Center, Richland County Government,<br><br>Defendant. | Civil Action No. 3:22-cv-608-CMC<br><br><br>**ORDER DENYING<br>MOTION FOR PRELIMINARY<br>INJUNCTION (ECF No. 7)** |

Plaintiff Richard Alexander Murdaugh ("Murdaugh") filed a Complaint against D. Shane Kitchen, then Interim Director of Alvin S. Glenn Detention Center ("ASG"), alleging Murdaugh's outgoing phone calls were recorded, and the recordings disclosed to the press in violation of federal law in response to a South Carolina Freedom of Information Act ("FOIA") request. ECF No. 1, Compl.[1] Murdaugh also filed a motion for preliminary injunction seeking relief under Title III, the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §2510 *et seq.* ("Title III"), to prohibit ASG from continuing to disclose such recordings in response to media requests. ECF No. 7. Defendant filed a response in opposition (ECF No. 23), and Murdaugh filed a reply (ECF No. 31). Murdaugh then filed a supplemental memorandum (ECF No. 53), to which Defendant filed a response (ECF No. 54). The motion is now ripe for resolution.

---

[1] Kitchen resigned as Interim Director after the filing of this action. The Interim Director is now Ms. Washava Moye, who was substituted as Defendant in her official capacity pursuant to Fed. R. Civ. P. 25(d). ECF Nos. 55, 60. Moye will be hereinafter referred to as "Defendant."

**FACTS**

Murdaugh is a pretrial detainee being held at ASG on South Carolina state court charges. During his detention, Murdaugh made calls to family and friends. These calls were recorded pursuant to ASG Inmate Rules, which state "[a]ll calls from the housing modules are collect calls and are subject to recording and monitoring." ECF No. 7-1 at 7. When a telephone call is initiated, both parties receive a recorded message advising "all calls are subject to monitoring and recording." ECF No. 23-1 at ¶ 8 (Kitchen aff.).[2] Richland County contracts with AmTel to provide telephone services to inmates at ASG. *Id.* at ¶ 3. All outgoing inmate telephone calls are automatically recorded by AmTel, except for attorney-client calls for which prior arrangements are made. *Id.* at ¶ 5.

The Murdaugh cases have attracted media attention from local and national news outlets. In January 2022, an electronic media organization submitted a request for recordings of Murdaugh's outgoing telephone calls from ASG under the South Carolina FOIA. Any FOIA request received by ASG is forwarded to the Richland County Ombudsman's Office. That office, the County Attorney's Office, or both in consultation, determine what public records in possession of ASG may be subject to disclosure under the FOIA, or whether an exemption applies. ECF No. 23-1 at ¶ 9 (Kitchen aff.). In this case, recordings were released to the electronic media organization, portions posted on Twitter and approximately one hour of calls publicly released on

_____

[2] While he was Interim Director and Defendant in this case, Kitchen submitted an affidavit in support of Defendant's response in opposition to the motion for preliminary injunction. ECF No. 23-1.

2

a podcast, as well as on YouTube.  Subsequently, other news organizations submitted similar FOIA

requests for recordings of Murdaugh's calls.

**THE INSTANT LAWSUIT**

Murdaugh filed this lawsuit against the Interim Director of ASG, in his official capacity,

for injunctive relief.  ECF No. 1 at ¶ 3.  Murdaugh alleges a violation of Title III, when his

telephone conversations were recorded, and the recordings released to the press pursuant to a FOIA

request.  *Id.* at ¶ 29. He seeks preliminary and permanent injunctive relief preventing Defendant

from disclosing recordings of his telephone calls to anyone or for any other purpose except as

expressly permitted by Title III.  *Id*. at ¶ 30.

Murdaugh argues recordings of his telephone calls should not have been disclosed to the

media as disclosure is "strictly limited" by Title III.  ECF No. 7 at 3.  He contends Title III limits

disclosure of intercepted communications to the following three circumstances:

> (1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication ... may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.
>
> (2) Any investigative or law enforcement officer ... may use such contents to the extent such use is appropriate to the proper performance of his official duties.
>
> (3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication ... may disclose the contents ... while giving testimony under oath....

18 U.S.C. § 2517(1)–(3).  He seeks a preliminary injunction pursuant to 18 U.S.C. § 2020(b), a

provision of Title III that authorizes preliminary and other equitable or declaratory relief as may

3

be appropriate, to enjoin Defendant from disclosing the recordings for any purpose except as expressly permitted in § 2517(1)-(3). *Id.* at 5.

Defendant filed a response in opposition, arguing Murdaugh failed to address all four factors supporting preliminary injunctive relief, including whether the absence of an injunction would cause irreparable harm, the balance of the equities, or that the preliminary injunction would be in the public interest. ECF No. 23 at 3. Defendant further contends Murdaugh is not likely to succeed on the merits, as Title III has no application to recordings of his calls because, based on the law enforcement exception to Title III, no interception occurred. *Id.* at 3-5. In addition, Defendant asserts Murdaugh consented to recording and monitoring of his telephone conversations, and is presumed to know the law, including as to FOIA rights of access to public information. *Id.* at 6-7. Finally, Defendant submits issuance of an injunction would interfere with the "strong public policy that underpins the Freedom of Information Act." *Id.* at 8.

Murdaugh filed a reply, contending the law enforcement exception to Title III does not apply because the calls were intercepted by a private vendor under contract with ASG, not by any investigative or law enforcement officer. ECF No. 31. Further, he argues the consent exception may permit recording of the calls, but public release "exceeds the scope of the consent and is therefore prohibited." *Id.* at 2. He contends public policy requires a narrow construction of Title III and release of recordings for non-law enforcement purposes will have far-ranging consequences. *Id.* at 8. Finally, he asserts § 2520 of Title III specifically allows for a preliminary injunction. *Id.* at 9.

4

On May 3, 2022, Murdaugh filed a supplemental memorandum to detail information recently obtained by subpoena from the two companies, AmTel and Customer Service of America ("CSA"), that provide telephone services for detainees at ASG. ECF No. 53. AmTel's and CSA's responses note the contract with ASG expired November 6, 2019, but has continued on a month-to-month basis since then. All detainee phone calls are recorded except privileged calls with an attorney. An employee of AmTel/CSA has access to the recordings, and anyone requesting access must contact AmTel/CSA's operations manager. *Id.* at 3. Also produced were activity logs of all users who listened to recorded calls of detainees at ASG from January 1, 2021, to March 14, 2022, and activity logs of all users who listened to Murdaugh's recorded calls. ECF Nos. 53-7, 53-8.

Based on the documents and information received from AmTel/CSA, Murdaugh submits the law enforcement exception to Title III does not apply because AmTel/CSA are no longer under contract with Richland County for telephone services at ASG and clearly are not being supervised by law enforcement officers as required. *Id.* at 4. He argues recorded calls of detainees at ASG are being monitored almost exclusively by outside law enforcement and prosecution agencies for criminal investigative purposes unrelated to jail operations, another reason the law enforcement exception does not apply. *Id.* at 5. Finally, he contends the consent exception does not apply because release to the public exceeds the scope of the consent. *Id.* at 6.

Defendant filed a supplemental memorandum in opposition, arguing information received in response to the subpoenas directed to AmTel and CSA is unsworn, not authenticated, and not provided as declarations under penalty of perjury. ECF No. 54 at 2. Defendant submits a

5

contractual relationship between Richland County and AmTel/CSA continues on a month-to-month basis, and the law enforcement and consent exceptions to Title III apply.

**STANDARD**

A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted) (citation omitted). The traditional purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). To qualify for injunctive relief, a plaintiff must show (1) likelihood he will succeed on the merits; (2) likelihood he will suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of equities tips in his favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010).[3]

The *Winter-Real Truth* standard requires the party seeking the injunction to make a "clear showing" he is likely to succeed on the merits. *Real Truth*, 575 F.3d at 345; *see also Winter*, 555 U.S. at 22. This standard compels the moving party to show he is likely to prevail. Regardless of

_____

[3] As noted by Murdaugh, § 2520(b) includes as a remedy a preliminary injunction. However, that does not mean analysis of the *Winter-Real Truth* factors can be ignored.

the balance of hardships, it is insufficient for the party to show only "grave or serious questions are presented" in the litigation. *Real Truth*, 575 F.3d at 346.

Second, the moving party must make a clear showing he is likely to be irreparably harmed if preliminary relief is denied. To meet this test, the party must show more than a mere possibility of harm. *Winter*, 555 U.S. at 21. Third, the moving party must show the balance of equities tips in his favor. *Id.* at 21, 26. Fourth, the court must consider whether grant or denial of the injunction is in the public interest. The court must give "particular regard" to the public consequences of granting a preliminary injunction. *Id.* at 24; *Real Truth*, 575 F.3d at 347. The Fourth Circuit no longer recognizes a "flexible interplay" among these criteria. Instead, each requirement must be fulfilled as articulated. *Real Truth*, 575 F.3d at 347.

## DISCUSSION

### I.    *Likelihood of Success on the Merits*

Murdaugh alleges that by releasing recordings of his personal telephone calls to the media, Defendant violated Title III, 18 U.S.C. §§ 2510-2522. In order to prevail on his request for a preliminary injunction, he must first show he has a likelihood of succeeding on the merits of his Title III claim.

Title III generally forbids interceptions of "any wire, oral or electronic communication" absent a court order authorizing it. *United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002) (citing 18 U.S.C. § 2511(1)(a)). Title III's protections apply to prisons. *See, e.g.*, *Hammond*, 286 F.3d at 192. Therefore, the recordings at issue here were properly released to the media only if (1)

7

the initial interception was lawful pursuant to an exception to the general injunction prohibiting use of wiretaps, and (2) the media's subsequent acquisition of the recordings was lawful.

Defendant contends the "law enforcement" and "consent" exceptions to Title III apply, and thus, recording of the calls was not an "interception" within the meaning of 18 U.S.C. §§ 2510(4), (5)(a)(ii).  The court examines both exceptions.

### a.  Law Enforcement Exception

The "law enforcement" exception excludes from the definition of "interception" recordings made by "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by . . . an investigative or law enforcement officer in the ordinary course of his duties."  18 U.S.C. § 2510(5)(a)(ii).  In other words, if the contents of a communication are acquired by an investigative or law enforcement officer in the ordinary course of his duties, there is no interception for Title III purposes.  *United States v. Lewis*, 406 F.3d 11, 16 (1st Cir. 2005); *see Hammond*, 286 F.3d at 192.

Courts, however, have consistently held the term "ordinary" should not be read so broadly to mean all investigative activity by an investigative or law enforcement officer.  If "ordinary" were read literally, warrants would rarely be required for electronic eavesdropping, a result clearly contrary to Congress's intent.  Consequently, courts have agreed "ordinary" in § 2510(5)(a)(ii) is reasonably interpreted to refer to routine noninvestigative recordings of telephone conversations such as recordings made by prison authorities, who routinely monitor inmates' conversations.  *Amati v. City of Woodstock*, 176 F.3d 952, 956 (7th Cir. 1999) ("Investigation is within the ordinary course of law enforcement, so if 'ordinary' were read literally warrants would rarely if

8

ever be required for electronic eavesdropping, which was surely not Congress's intent."); *see also* *Lewis*, 406 F.3d at 18 ("That an individual is an investigative or law enforcement officer does not mean that all investigative activity is in the ordinary course of his duties. Indeed, the premise of Title III is that there is nothing 'ordinary' about the use of a device to capture communications for investigative purposes.").

Murdaugh contends the law enforcement exception does not apply to calls made from ASG because the calls were recorded by AmTel, a private company, and not an investigative or law enforcement officer. Defendant, however, urges this exception applies where, as here, a local jail (ASG) contracts with a private company, AmTel, for a detainee telephone system that automatically records all outgoing detainee calls, except for certain attorney-client calls. *See* ECF 23-1 (Kitchen aff.). ASG claims there is no active monitoring of calls as they are made by staff at ASG, but that Professional Standards staff review random calls as well as calls on which there may be issues that arise. *Id.* According to Kitchen, former Interim Director, the calls are used for law enforcement and investigative purposes, including to conduct internal investigations of potential wrongdoing and institutional violations, as needed to maintain the safety and security of ASG, its detainees, and staff. *Id.* ASG concedes access to the recordings is extended to prosecutors with the South Carolina Attorney General's Office and the Fifth Circuit Solicitor's Office, and notes the system logs the identity of the persons who listen to each call. *Id.* On the other hand, Murdaugh submits there is no evidence of supervision of AmTel by ASG officials and it appears AmTel controls access to the recordings.

9

i.    Law Enforcement Officer

The statute defines an "investigative or law enforcement officer" as

> any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses.

18 U.S.C. § 2510(7).

The Fourth Circuit has held that a prison official qualifies as an investigative or law enforcement officer such that calls intercepted directly by prison personnel need not be judicially authorized pursuant to the law enforcement exception. *See Hammond*, 286 F.3d at 192. Circuit caselaw, however, does not address whether an entity acting as the agent of a prison pursuant to a contract may qualify under § 2510(7) as an investigative or law enforcement officer.[4]

District courts that have considered the issue have reached mixed results. In *Huguenin v. Ponte*, 29 F. Supp. 2d 57 (D.R.I. 1998), the court found employees of a private detention facility operated pursuant to a contract with a Rhode Island municipal corporation could not be considered "investigative or law enforcement officers" for purposes of Title III. In *United States v. Rivera*, 292 F. Supp. 2d 838 (E.D. Va. 2003), the court found Arlington County's contract with Verizon and Global Tel*link to provide the means and equipment used to record inmate calls came within the law enforcement exception where the private companies acted exclusively under the direction

---

[4] The First Circuit has implicitly approved the interception of inmate phone calls by a private entity with whom the Department of Corrections contracted, pursuant to the law enforcement exception. *Gilday v. Dubois*, 124 F.3d 277, 282 n.7 (1st Cir. 1997).

of prison officials, did not listen to or monitor the calls, nor have any discretion concerning which calls to record. The court relied on a separate section of Title III, § 2518, providing, where there is a judicially authorized interception, for conducting such interception "in whole or in part by Government personnel, or *by an individual operating under a contract with the Government,"* acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception. *Id.* at 843 (citing 18 U.S.C. § 2518 (emphasis added)).[5] Finally, in *United States v. Faulkner*, 323 F. Supp. 2d 1111 (D. Kan. 2004), aff'd on other grounds, 439 F.3d 1221 (10th Cir. 2006), the court found the law enforcement exception did not apply to recording of telephone conversations in a private detention facility providing prison services under contract with the United States Marshals Service.

In *Rivera*, which considered the Verizon contract with Arlington County,[6] Verizon and Globel Tel*Link's role "was limited to providing the means and equipment used to record the calls. They did not listen to or monitor the calls, nor did they have any discretion concerning which calls to record. All monitoring of Rivera's calls was conducted by prison officials." 292 F. Supp. 2d at 843. At ASG, AmTel's system automatically records the calls, and it has no discretion on

---

[5] The legislative history indicates Congress desired, for judicially authorized exceptions, to permit the government to contract out monitoring functions to private entities in order to "free field agents from the relatively routine activity of monitoring interceptions so that they can engage in other law enforcement activities." S. REP. No. 99-541, at 31 (1986).

[6] *Faulkner* and *Huguenin*, however, considered facilities that were wholly privately run, as opposed to county-run detention centers with a private company contracted to provide telephone services, as in this case and *Rivera*.

11

which calls to record, other than attorney-client privileged calls as arranged in advance. However, it is questionable whether AmTel is acting under direction or supervision of ASG, as it appears AmTel controls access to the calls for purposes of monitoring.

ii.     Ordinary Course of Duties

The law enforcement exception only applies to contents of a communication acquired "in the ordinary course of [an officer's] duties." § 2510(5)(a)(i). Caselaw makes clear the recording of telephone communications in  prison is performed in the ordinary course of duties of prison personnel "provided it is part of a prisons' routine procedure designed to safeguard security, and not part of a criminal investigation of a single inmate." *Rivera*, 292 F. Supp. 2d at 842 (citing *Hammond*, 286 F.3d at 192); *see also United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) ("[Metropolitan Detention Center] is a law enforcement agency whose employees tape all outbound inmate telephone calls; interception of these calls would appear to be in the ordinary course of their duties. . . We . . . therefore conclude that the law enforcement exception applies in the Circuit to MDC's routine taping policy.").[7]

---

[7] Not all calls recorded in a detention center are excepted from Title III. See *Abraham v. County of Greenville*, 237 F.3d 386, 390 (4th Cir. 2001) (holding judges' calls, though made from a county detention center that also housed state judges' offices, not subject to the law enforcement exception because they were not recorded for purposes of security in the ordinary course of an officer's duties.). However, *Abraham* noted its holding was a narrow one, and the court did not "impugn the County's need to monitor for law enforcement purposes calls relating to Detention Center inmates." *Id.* at 391.

12

Here, it is questionable whether detainee communications from ASG are recorded in the ordinary course of law enforcement duties. According to Kitchen, the Professional Standards staff at ASG monitors calls for law enforcement and investigative purposes, including internal investigations, as needed for safety and security purposes. ECF No. 23-1 (Kitchen aff.). However, data from AmTel/CSA shows approximately 91.55% of the total monitored calls from January 1, 2021, to March 14, 2022, were monitored by outside law enforcement or prosecution agencies such as the Attorney General's Office, the Richland County Sheriff's Department, or various police departments and solicitors' offices. ECF No. 53-7.[8] Murdaugh notes all of his calls were reviewed by prosecution agencies, and were not in the "ordinary course" of an officer's duties because he was singled out for monitoring for purposes unrelated to prison security. *Rivera*, 292 F. Supp. 2d at 842; *see also United States v. Green*, 842 F. Supp. 68, 73-74 (W.D.N.Y. 1994), *aff'd sub nom. United States v. Workman*, 80 F.3d 688 (2d. Cir. 1996). Records show Murdaugh's calls were monitored 417 times. ECF No. 53-8. Individuals associated with the South Carolina Attorney General's Office monitored 410 of these calls and the remaining seven calls were monitored by

---

[8]From January 1, 2021, until March 14, 2022, there were a total of 16,436 detainee calls that were monitored. Of this total, 15,057, or 91.55%, were monitored by individuals affiliated with the following law enforcement or prosecution agencies: Richland County Sheriff's Department, Columbia Police Department, SLED, Forest Acres Police Department, USC, Camden Police Department, Fifth Circuit Solicitor's Office, and the South Carolina Attorney General's Office. Only 631 calls, or 3.84%, were monitored by individuals associated with ASG. There were another 758 calls, or 4.61%, that were monitored using credentials that were not identified by AmTel and CSA. ECF No. 53-7.

individuals affiliated with the Fifth Circuit Solicitor's Office.  None of Murdaugh's calls were monitored by any individual affiliated with ASG. *Id.*

Although Defendant argues the information produced by AmTel/CSA is inadmissible, the court will assume for the sake of this analysis Murdaugh would be able to authenticate and properly admit this evidence.  If so, it is questionable whether the law enforcement exception would apply here.  It appears the recordings of detainee calls at ASG may not be made with the primary purpose of monitoring for jail security purposes, and thus may be outside the ordinary course of duties. Moreover, Defendant has failed to show AmTel employees are supervised by ASG personnel and thus considered "investigative or law enforcement officers" for purposes of Title III.  However, the court need not decide whether the law enforcement exception applies, as another exception to Title III applies.

> b.  *Consent Exception*

Defendant also argues the consent exception applies to remove the recordings from the protection of Title III.  The Inmate Rules Orientation provided to Murdaugh states all calls from the housing modules are collect calls and are subject to recording and monitoring, and callers (and recipients) are notified at the beginning of each call that all calls are subject to monitoring and recording.  ECF No. 23-1 at ¶ 8 (Kitchen aff.).

Section 2511(2)(c) provides "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."  The Fourth Circuit has found the consent exception applies to prison inmates

14

required to permit monitoring as a condition of using prison telephones. *Hammond*, 286 F.3d at 192; *see also United States v. Cox*, CR–17–4–H–CCL–JTJ, 2017 WL 5153405, at *5 (D. Mont. 2017) (citing *United States v. Faulkner*, 439 F.3d 1221, 1224 (10th Cir. 2006)) ("[T]his court is persuaded by cases from the First, Second, Fourth, Eighth, Ninth, and Tenth Circuits that readily apply the consent exception by holding 'we have no hesitation in concluding that a prisoner's knowing choice to use a monitored phone is legitimate consent under the Wiretap Act.'").

This case is similar to cases from the Ninth and Second Circuits finding prisoners consented to having calls recorded and holding "[w]hen one party consents to a tap, Title III is not violated." *Van Poyck*, 77 F.3d at 292; *United States v. Amen*, 831 F.2d 373 (2d. Cir. 1987). In *Van Poyck*, the detention center posted signs above the phones warning all calls were monitored, and the defendant signed a consent form warning of taping and monitoring and was provided a prison manual warning of recording. *Van Poyck*, 77 F.3d at 292. Similarly, in *Amen*, inmates attended an orientation lecture at which the taping and monitoring system was discussed, each inmate received a copy of the Inmate Handbook with a notice stating calls were taped and monitored, and notices were placed on each telephone stating "your use of institutional telephones constitutes consent to this monitoring." *Amen*, 831 F.2d at 379. Here, Murdaugh received the Inmate Rules Orientation explaining calls were subject to recording and monitoring, and a notice at the beginning of each call informed both parties[9] of the recording.

---

[9] "A recipient of an inmate's call who ignores a recorded warning likewise implicitly consents to the call's recording." J. Carr, The Law of Electronic Surveillance, § 3:4 (December 2021 Update).

Murdaugh stresses although he was on notice the calls were recorded and monitored, he did not consent to release recordings of his calls for non-law enforcement purposes. He argues he did not expressly consent to such release, and it is outside the scope of any implied consent.

While Murdaugh argues the release of his conversations to the public via the media is outside the scope of his consent, it is clear he consented to the recording of his conversations. It is well-settled that the scope of a search is generally defined by its expressed object. *United States v. Correa*, 220 F. Supp. 2d 61, 64 (D. Mass 2002) (citing *Florida v. Jimeno*, 500 US. 248, 251 (1991)); *see also United States v. Conley*, 531 F.3d 56, 59 (1st Cir. 2008). Here, as in *Correa* and *Conley*, there was no expressed object for the recording and monitoring in any of the notices provided that would limit the scope of the consent. *Correa*, 220 F. Supp. 2d at 64 (explaining inmates were merely told all calls would be monitored and/or recorded, without any indication of why such recording was happening, in the inmate orientation or recorded message before calls); *Conley*, 531 F.3d at 59 (notices received by inmates did not reference institutional policy and instead asserted that all calls, except privileged ones, would be monitored). The court in *Correa* further found no limitation on the consent existed: the defendant consented to a "monitoring and recording system that was unqualified in all relevant aspects," and the institution's officials "expressed no object of the search that could be construed to limit its scope." 220 F. Supp. 2d at

16

65.  Therefore, the court found the recording could be utilized despite the defendant's argument that he did not consent to recording for that purpose. *Id.*[10]

The same holds true here.  Although Murdaugh contends he did not consent to recording of his calls for purposes of disclosure to the public via the media, the consent he granted by utilizing the phone system after warnings via the Inmate Rules Orientation and recorded warnings at the beginning of each call was unqualified and not limited as he argues.  "Consent, once having been given, will be deemed to have been unqualified." J. Carr, The Law of Electronic Surveillance § 3:4, at 2 (Dec. 2021 Update) (citing *Correa*, 220 F. Supp. 2d at 65; *Lewis*, 406 F.3d at 15).

### c.  Title III is Inapplicable Here

Because Murdaugh consented to the taping of his calls, there was no interception within the meaning of Title III.  Where there is no "interception" within the meaning of Title III, the limits on disclosure in 18 U.S.C. § 2517(1)-(3) do not apply.  *Hammond*, 286 F.3d at 191 ("[T]he district court concluded that once a recording is permitted under either of the above exceptions, it is thereafter exempted from any further restriction under Title III . . . [W]e conclude that the [third party] was free to use the intercepted conversations once they were exempted under either § 2510(5)(a)(1) or § 2511(2)(c)."); *Lewis*, 406 F.3d at 19-20 ("Recordings authorized by § 2510(5)(a)(ii) are 'not the product of an interception, consensual or otherwise, governed by Title III; therefore, they are not subject to whatever limitations Title III places upon the disclosure of

---

[10] The Fourth Circuit similarly rejected an inmate's claim that the use of information contained in wire communications should be limited according to the precise terms of the applicable exception or authorization.  *Hammond*, 286 F.3d at 193.

17

information that does result from a covered interception."); *Smith v. United States Dep't of Justice*, 251 F.3d 1047, 1049-50 (D.C. Cir. 2001) ("[Section] 2510(5)(a)(ii) does not authorize the recordings but instead excludes them entirely from the coverage of the statute."). Therefore, Title III's limitations on disclosure of the recorded calls are not applicable, and Murdaugh has failed to show likelihood of success on the merits on his Title III claim.[11]

    *II.*    <u>Release to the Press</u>

A determination that Title III does not apply to the recordings here does not mean such recordings were properly released to the press pursuant to the South Carolina FOIA. Although prisoner calls are routinely recorded in state and federal detention and prison facilities, the parties have cited no case in which such recordings were released to the press pursuant to a freedom of information request or otherwise.[12]

---

[11] Murdaugh's failure to show likelihood of success on the merits is fatal to his motion for preliminary injunction. Therefore, the court need not examine the remaining three factors.

[12] The Federal Bureau of Prisons ("BOP") considers inmates' privacy concerns when it receives a federal FOIA request for inmate information. It applies the Privacy Act, 5 U.S.C. § 552a, and federal FOIA disclosure regulations, including an exception for privacy. The BOP appears to have anticipated some of the potential issues arising from disclosure of information as requested in this case. BOP Policy Statement PS 1351.05 discusses FOIA requests, and Attachment A notes matters that "(A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy," among others, are exempt from disclosure under FOIA. Even for requests from law enforcement for previously recorded telephone conversations, disclosure is only appropriate when requested in an emergency situation, criminal activity is discovered through routine monitoring for prison administrative purposes, or requested through proper process.

18

Murdaugh, however, has not sought relief based on the FOIA.  Further, this court has not been made aware of the basis for the FOIA decision here. The court notes South Carolina's FOIA statute states a "person has a right to inspect, copy, or receive an electronic transmission of any public record of a public body, except as otherwise provided by Section 30-4-40, or other state or federal laws." S.C. Code § 30-4-30.  Matters a public body may exempt from disclosure under § 30-4-40, however, include audio recordings compiled for law enforcement purposes to the extent their production "would deprive a person of a right to a fair trial or an impartial adjudication" (§ 30-4-40(a)(3)(B)); "would constitute an unreasonable invasion of personal privacy" (§ 30-4-40(a)(3)(C)); or "would disclose any contents of intercepted wire, oral, or electronic communications not otherwise disclosed during a trial" (§ 30-4-40(3)(G)). Thus, under state law, recordings compiled for law enforcement purposes may be exempt from disclosure.[13] And Kitchen has conceded that the recordings here were compiled for law enforcement purposes.  ECF No. 23-1, Kitchen aff. at ¶ 5. ("The telephone calls are used for law enforcement and investigative purposes, including to conduct internal investigations of potential wrongdoing and institutional violations, as needed to maintain the safety and security of ASGDC, its inmates, and staff.").

Murdaugh argues disclosure could affect law enforcement and prisoners in significant ways.  He submits privacy and fair trial rights of prisoners may be violated, and over-burdened prison staff may be required to respond to FOIA requests by defense counsel in many cases. ECF

---

[13] Section 30-4-40(a) provides "a public body may but is not required to exempt" such recordings.

19

No. 31 at 8-9; § 30-4-40(2), (3) (A) – (F).  Because no supplemental state law cause of action for violation of the FOIA has been alleged, however, that issue is not before this court.

**CONCLUSION**

For the reasons stated herein, Murdaugh's motion for preliminary injunction pursuant to 18 U.S.C. § 2020(b) is denied.  The parties are directed to confer and determine whether an Amended Scheduling Order is necessary at this time.  If so, a proposed Amended Scheduling Order should be submitted no later than June 21, 2022

**IT IS SO ORDERED**.

<u>s/Cameron McGowan Currie</u>
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 1, 2022

20